December 8th, 1860.

# SUPREME COURT—IN ADMIRALTY.

## W. H. ROYS *et als.* *vs.* THE BRIG "WAILUA," AND CARGO.

A RECEIPT given by a seaman, in full of all demands, is open to explanation, and the degree of weight to be attached to it must depend upon the circumstances under which it is given.

Justice ROBERTSON delivered the decision.

This is a libel *in rem*, filed by W. H. Roys, William Boyer, H. Bernton and John Diaz, against the Hawaiian whaling brig "Wailua" and cargo, Lass, master. It appears by the libel that, in the month of December, 1858, W. H. Roys shipped for service on board the said brig, as second mate, at the 25th lay or share of the proceeds of the whaling and trading; William Boyer, as fourth mate and boatsteerer, at the 50th share; H. Bernton, as cooper, at the 35th share; and John Diaz, as steward, at the 90th share. The cause of action is the same as that in the case of Makaula *et als.* *vs.* the brig "Wailua," decided a few days ago, and it is unnecessary, therefore, to recapitulate further the allegations of the libel.

Messrs. Hoffschlaeger & Stapenhorst appeared as claimants, and filed an answer to the libel, admitting that these libellants are entitled to a share of the proceeds of the trading as well as the whaling. They deny that Captain Lass wintered with his vessel in Plover Bay from design or previous purpose, but aver that he remained in the Bay later than vessels usually

remain, for the purpose of getting oil, and with the assent of all the libellants except John Diaz, and that the vessel became shut in through stress of weather, and the sudden freezing up of the Bay. They aver, also, that John Diaz has been paid in full for all claims he has upon the vessel. The answer is, in other particulars, the same in substance as that in the case of Makaula *et als. vs.* the brig "Wailua."

For the sake of convenience, and by consent of counsel, the testimony taken in the former case, so far as it is applicable, was read in this cause also, and I shall not refer to it at length.

The decision of the Court in this cause is in favor of the libellants, and the extent to which, in my opinion, they are severally entitled to recover, will be stated farther on.

It appears that on the 29th of October last, some time after the return of the "Wailua" to this port, and after the libellants and most of the crew had refused to settle with the owners for their wages, taking the oil on board at the quantity estimated by the latter, the last named libellant, John Diaz, did accept from the agents the sum of $47 50, the balance which the agents admitted to be due him for wages, and gave a receipt in full, stating that he had "no further claim against the said vessel." It was contended by counsel that this receipt should not be held binding upon Diaz, as it was proven that a greater sum was, in fact, due to him. I am aware that Courts of Admiralty generally are slow to regard a receipt in full of all demands, given by a seaman, as any bar to an action for wages, however formally such receipt may be drawn, or attested, holding it open to explanation or contradiction by oral testimony. But I think the degree of weight to be attached to such a receipt, must always depend upon the circumstances under which it is given. In this instance it appears that no undue advantage was taken of Diaz, who is an intelligent man, for he had disputed and refused to accept the settlement offered to him, and with a fair opportunity to have satisfied himself in regard to the matter, he finally accepted the amount tendered to him in full of his wages. (See Thompson *vs.* Faussat, Peters' C. C. R.. 182.) Under these circumstances, I must consider his receipt conclusive as to his wages; but as it does not appear that the receipt was expressly understood by either

party to embrace any claim that Diaz might be able to establish for his loss of time, by detention in Plover Bay, I cannot regard it as binding upon him in respect of that.

The term for which the libellants shipped must be considered to have terminated on the 29th of November, 1859, at which date the accounts between the vessel and the libellants, Roys, Boyer and Bernton, should be closed, and a balance struck, allowing interest on the advances they may have received up to that date. If any balance shall be found due to either of those ibellants, it should be placed to his credit; but if anything be found due from either of them at that date, he should not be charged with it, because the advances made to them previous to that time, are applicable only to the term for which they signed articles.

None of the libellants should be charged in account with any clothing, or other necessaries, furnished to them from the 20th of November, 1859, to the 10th of July, 1860, at which date the accounts of Roys, Boyer and Bernton will be opened for the second season.

I have no doubt, on the evidence, that the libellants, Boyer and Bernton, together with the chief mate, who was lost, and Mr. Williams, the third mate, in the consultation which took place between the master and officers, in accordance with what was anciently a custom of the sea, concurred with the former in running the risk of remaining in Plover Bay, so late as to endanger their being able to leave it for the winter, and which resulted in the vessel's being frozen in. Therefore I do not consider Boyer and Bernton equitably entitled to recover for the loss of time which ensued. But this will not apply to Roys, who, it appears, did not concur in that arrangement.

The libellants disputed the net value of the proceeds of trading as stated in the claimants' answer. But it was contended on behalf of the claimants, that the libellants agreed at the time of shipment, to abide by the value of the articles derived from trading, as it should be estimated by the agents of the vessel in Honolulu. The testimony adduced on this point is conflicting; but it appears that the agents were in the habit of making the agreement which they say was made in this instance, with officers shipped for service on their other vessels; and I think the

balance of evidence is in their favor. I do not consider such an agreement, as was contended by counsel for the libellants, when made by men of their intelligence and capacity to guard their rights, as being in itself so unreasonable that the Court would be justified in disregarding it ; for I can conceive it quite consistent with probability, that the libellants should have agreed to accept the valuation of the agents, a mercantile house of high standing.

As no express contract existed with the libellants for their services during the second whaling season, and as the vessel during that season was able to man but two boats, the libellants, Roys, Boyer and Bernton, as in the case of the seamen, Makaula and others, are entitled to be paid for that season, such an amount as shall appear reasonable to the Court, as a *quantum meruit*.

The quantity of oil obtained is 593 barrels, which will be divided in the proportions indicated by the claimants' answer, thus : 350 barrels for the first season, and 243 barrels for the second season. · The quantity of bone procured by whaling is 7,029 pounds, which will be divided thus : 4,148 pounds for the first season and 2,881 pounds for the second season. The net value of the proceeds of trading, as stated in the answer, is $763 18.

The libellants agreed to be paid off at the " United States Consular rates " for oil and bone, and I shall hold those rates, as proven for the season of 1860, applicable to the settlement of the accounts of the three libellants, who have not yet received their wages, for the whole voyage. No charge can be allowed against the libellants, for not remaining by the vessel a certain number of days after her arrival in the home port, in the absence of any express contract, or usage, to support such a charge.

I consider the several libellants entitled to recover as follows, viz : W. H. Roys, one 25th share of oil and bone, as per agreement, for the first season ; for the second season, during which he acted as chief-mate, one 25th share with fifty per cent. added as a *quantum meruit*, and in consideration of his loss of time, the sum of two hundred and fifty dollars ; William Boyer, one 50th share of oil and bone, as per agreement, for the first season,

and for the second season, one 50th share with forty per cent. added as a *quantum meruit ;* H. Bernton, one 35th share of oil and bone, as per agreement, for the first season, and for the second season, one 35th share with forty per cent. added as a *quantum meruit ;* John Diaz, the sum of one hundred dollars, in consideration of his loss of time. Roys, Boyer and Bernton will also receive, respectively, one 25th, one 50th, and one 35th share of the net value of the proceeds of the trading.

An order of reference will be made, authorizing J. W. Austin, Esq., to compute the amount due to each, allowing all proper deductions, and upon the coming in and approval of his report, a decree will be entered accordingly.

Mr. Harris, for the libellants.

Mr. J. W. Austin and Mr. Montgomery, for claimants.