Charles J. Merriam, Plaintiff-Appellant, v. Jean McConnell, Defendant-Appellee.

Gen. No. 48,181.

First District, First Division.

April 10, 1961.

Rehearing denied April 28, 1961.

Robert J. Downing and Estelle Linn, of Chicago, for appellant.

Graham & McElligott, of Chicago (William C. Wines, Errett O. Graham and John A. McElligott, of counsel) for appellee.

PRESIDING JUSTICE KILEY delivered the opinion of the court.

Plaintiff sued for a permanent injunction to restrain defendants from "maintaining and growing . . . box elder trees which annually host and are infested by box elder bugs, or by otherwise controlling such vermine so as to limit them to defendants' premises." The trial court dismissed the cause and plaintiff has appealed.

█ The motion admitted the well pleaded facts: Plaintiff and defendants own and reside on adjoining properties in a well-populated residential area of Northfield. Defendants "maintain and grow" on their property a large number of box elder trees. The ugly, black and red, three-quarter inch long bugs each year infest the "host" trees in great numbers. They migrate from the trees to plaintiff's dwelling, endangering his "comfortable and peaceable use and enjoyment," and impairing the value, of his property, and "embarrassing and distressing" his guests. The bugs invade plaintiff's home and soil the furnishings, which he must expend money to clean, repair and replace. Plaintiff has complained to defendants several times without effect, has suffered at least $150.00 damages, and similar damage will probably occur annually unless the injunction issues.

Defendants' motion to dismiss was on the ground that the court had no jurisdiction, since the State Department of Agriculture is the sole authority to deal with the alleged nuisance and provides an administrative remedy for abatement.

A preliminary question has been raised: Are defendants limited to the jurisdictional, and sole, ground of their motion to dismiss?

■ Defendants, as appellees, may sustain the decree of dismissal "by any argument and upon any basis appearing in the record which shows the decree is right, even if [they] had not previously advanced such argument." Becker v. Billings, 304 Ill. 190, 205, 136 N.E. 581 (1922); 222 East Chestnut St. Corp. v. Murphy, 325 Ill. App. 392, 399–400, 60 N.E.2d 450 (1954). Defendants are entitled, therefore, to argue on appeal the vital question whether the complaint, in the record, states a cause of action of which equity will take jurisdiction.

■ In deciding this question of the sufficiency of a complaint before verdict or judgment, we construe the complaint strongly against plaintiff, giving him the benefit of the true meaning of the language used. Field v. Oberwortmann, 14 Ill.App.2d 218, 144 N.E.2d 637 (1957).

■ Plaintiff's prayer is based on the theory of a private nuisance. In general, a private nuisance is an individual wrong arising from an unreasonable, unwarrantable or unlawful use of one's property producing "such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." Gardner v. International Shoe Co., 319 Ill. App. 416, 433, 49 N.E.2d 328 (1943). The complaint, therefore, should allege facts which justify the inference that defendants used their property in an "unreasonable, unwarrantable or unlawful" way.

In Bliss v. Ball, 99 Mass. 597 (1868), the Supreme Court of Massachusetts decided that the "shade of a tree" making defendant's house damp and unhealthy was damnum absque injuria. In Michalson v. Nutting, 275 Miss. 235, 175 N. E. 490 (1931), roots of trees on defendant's property clogged plaintiff's sewers and cracked cement in the cellar. The Supreme Judicial Court of Massachusetts affirmed a decree dismissing the suit for injunction on the "principle," applied from

244

the Bliss case, that "an owner of land is at liberty to use his land, and all of it, to grow trees. Their growth naturally and reasonably will be accompanied by the extension of boughs and penetration of roots overhead and into adjoining property of others." The Court thought it "wiser" to adopt the common law practice of leaving the neighbor to his own protection "if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious."

In Gardner v. International Shoe Co., 319 Ill. App. 416, 433, 49 N.E.2d 328 (1943), aff'd, 386 Ill. 418 (1944), the court reversed several judgments for damages alleged to result from operation of a tannery. It stated that the cases, deciding upon alleged nuisances in the operation of businesses, consider the burdens necessarily incident to life in urban and industrial communities where the air is filled with unavoidable, unpleasant odors in the conduct of business which are a necessary incident of life therein. The court adverted to the consequences of sustaining the judgment in a case like that before them: the industrial world would be exposed to litigation, "the extent of which one's imagination toils in vain to comprehend."

No Illinois case has been cited nor have we found one in which courts have enjoined the operation of natural forces. In all cases we have read, plaintiffs have recovered damages, or defendants have been enjoined, only where a human agency has intervened in a negligent, careless or willful way to turn the natural creation into a nuisance, as for instance, where cities have polluted natural water courses, Cook v. Du Quoin, City of, 256 Ill. App. 452 (1930); Eckart v. Belleville, City of, 294 Ill. App. 144, 13 N.E.2d 641

(1938), or an individual has done so. Wineland v. Huber, Inc., 275 Ill. App. 264 (1934). This is the view expressed in 1 Wood, Nuisances 148–49 (3d ed. 1893):

> In order to create a *legal* nuisance, *the act of man* must have contributed to its existence. Ill results, however extensive or serious, that flow from natural causes, cannot become a nuisance, even though the person upon whose premises the cause exists could remove it with little trouble and expense.
>
> . . .
>
> Thus it will be seen that a nuisance cannot arise from the neglect of one to remove that which exists or arises from purely natural causes. But, when the result is traceable to artificial causes, or where the hand of man has, in any essential measure, contributed thereto, the person committing the wrongful act cannot excuse himself from liability upon the ground that natural causes conspired with his act to produce the ill results.

Plaintiff relies upon Oyster v. Levy, 25 Pa. Dist. Rep. 1116 (1916). There, a property owner succeeded in the trial court in enjoining a neighbor whose large willow tree was infested with numerous bugs and insects that annoyed plaintiff and interfered with the enjoyment of his property and rendered its possession uncomfortable. The trial court's reported opinion found the tree a nuisance, but because the defendant, upon complaint of plaintiff, had pruned the tree and sprayed it and remedied to a great extent the cause of the complaint, the court declined to order the removal or destruction of the tree. The decree ordered defendant to keep the tree properly pruned and to spray it when necessary to prevent the infestation.

In support of the finding of nuisance, that trial court cited Tuckashinsky v. Lehigh & W. Coal Co.,

199 Pa. 515, 49 Atl. 308 (1901). That case does not support the finding. There, plaintiff was injured when lightning struck a "powder house" on defendant's property. The Supreme Court affirmed the trial court's judgment on a directed verdict for defendant. There was no evidence of carelessness, it said, and the shed itself was not a nuisance; "the explosion was caused by no act of the defendant but by a stroke of lightning." The Tuckashinsky case, though it has a different twist in that an artificial object was made harmful by the intervention of nature, is consistent with the rule in the cases we have read, that is, refusal to recognize purely natural forces as nuisances.

Plaintiff also relies on Newton v. Town of Highland Park, 282 S.W.2d 266 (Tex. 1955), to support the statement that "breeding places of the mosquitoes are nuisances per se." That case is not helpful. It involved a neglected swimming pool in which water had become stagnant and a breeding place for mosquitoes. The statement quoted is the declaration of a Texas statute.

Plaintiff asks that defendants be compelled to take necessary steps to limit the bugs to their property. On its face, this prayer is obviously impossible. Plaintiff does not suggest how the defendants could limit the bugs to their property. He asks that defendants be restrained from growing box elder trees upon their property. There is nothing unlawful about growing of box elder trees and we agree with the views of the Massachusetts courts that defendants may grow trees to whatever extent they wish on their own property. The fact that box elder bugs may annually infest the trees, in our opinion, does not make the trees a private nuisance nor does the conjunction of the bugs and the trees constitute a private nuisance. The law is that defendants themselves would have to be guilty of some carelessness, negligence or willfulness in bringing, or helping to bring, about a harmful condition in order to entitle plaintiff to the relief sought in this

particular prayer. The complaint does not allege that they were guilty in any of these ways.

We think that we may say of suburban, residential communities what Judge Bristow said in Gardner v. International Shoe Co., 319 Ill. App. 416, 433, 49 N.E.2d 328 (1943), of the necessary incidents of life in urban and industrial communities. When a person moves to a wooded suburban area he should know that he is going to a place where nature abounds; where trees add to the pleasure of suburban life; and where the shade of trees, leaves, overreaching branches, roots, squirrels, birds, insects and the countless species of nature tend to disregard property lines. The effects of nature are incidents of suburban living.

Likewise, the observation written by Judge Bristow in the Gardner case, with respect to the consequences of allowing relief in cases like that, applies to the instant case. We think that reversing the decree before us would probably expose property owners, especially in wooded suburban areas, to much vexation. And, it might result in adding the weight of "clothes-line" disputes, which ought to be settled amicably by neighbors, to the mounting burden of law suits now impeding the administration of justice. As authority for the consideration of the possible results of our decision, see Bush v. Babb, 23 Ill.App.2d 285, 291, 162 N.E.2d 594 (1959).

■ We conclude that equity should not lend its jurisdiction to the control or abatement of natural forces as though they were nuisances. We hold, therefore, that the complaint states no cause of action. If the Chancellor made his decision on different grounds, that does not concern us. The decree dismissing the complaint was correct and it is hereby affirmed.

Affirmed.

BURMAN and MURPHY, JJ., concur.