399 So.2d 1266 (1981)
Donald C. SCOTT
v.
Paul H. RAMOS.
No. 11907.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
Donald J. Pickney, Bruce A. Scott, New Orleans, for plaintiff-appellee.
Nicaud, Justrabo & Rousset, René R. Nicaud, Felix O. Rousset, and J. Courtney Wilson, New Orleans, for defendant-appellant.
Before GULOTTA, GARRISON and CHEHARDY, JJ.
CHEHARDY, Judge.
Defendant, Paul H. Ramos, appeals a district court judgment on a motion for a new trial in favor of plaintiff, Donald C. Scott, and against the defendant, recalling an earlier judgment rendered by that court and recasting the defendant as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that a permanent injunction issue herein, directed to defendant Paul H. Ramos, ordering him to keep the tree, its limbs and branches cut so that they remain cut back to the property line to a point ten feet above the eaves and at no point shall they be closer than ten feet above any part of the roof.

*1267 "It is further ordered that defendant reimburse plaintiff the reasonable cost of screening all the gutters on the plaintiff's house and keeping them in repair.
"It is further Ordered that between December 15th and December 31st of each year, defendant reimburse plaintiff for the reasonable cost of removing leaves and other fallen debris from the roof of plaintiff's house and garage.
"It is further Ordered, Adjudged and Decreed that when necessary, but not more often than once a month, in addition to the above, defendant shall reimburse plaintiff reasonable expense incurred in removing leaves and branches from plaintiff's yard.
"It is further Ordered, Adjudged and Decreed that in addition to the above, should a storm cause the falling of unusual amounts of leaves or other debris from the tree, defendant shall reimburse plaintiff the reasonable expense of removing said debris."
This judgment was also later amended assessing costs against the defendant. In giving his reasons for the amended judgment, the district court judge also stated:
"According to the uncontradicted testimony, the trimming required by previous judgment would effectively destroy the tree. As indicated, I have visited the area and inspected the two yards so as to develop an impression of how best in equity to adjust the differences between these neighbors.
"The tree is large and beautiful (if you like trees) and should be preserved, not only for the sake of Mr. Ramos, but for the sake of his neighborhood.
"C.C. Art. 688 qualifies the right of a land owner to demand that overhanging branches be trimmed by requiring a demonstration that the overhanging branches `interfere with the use of his property'.
"If overhanging branches can be trimmed to a point short of the property line but which trimming eliminates interference with the neighbor's `enjoyment', the article seems to prefer such a result.
"The injunction order fashioned, hopefully, achieves an equitable adjustment of the rights afforded each party under this article."
LSA-C.C. art. 688 provides:
"A landowner has the right to demand that the branches or roots of a neighbor's trees, bushes, or plants, that extend over or into his property be trimmed at the expense of the neighbor.
"A landowner does not have this right if the roots or branches do not interfere with the enjoyment of his property."
We find no prior jurisprudence related to this particular article which became effective January 1, 1978. It is our opinion, in view of this article, that a landowner has only a qualified right to demand from a neighbor trimming of branches from the neighbor's trees extending over the landowner's property at the neighbor's expense and that right is limited to the extent that the branches interfere with the landowner's enjoyment of his property.
The plaintiff and the defendant own adjacent properties. The defendant has a large oak tree which extends over the property of the plaintiff and, to some extent, overhangs the roof of plaintiff's house. Plaintiff testified that every time the wind blows the tree deposits leaves and branches on his roof requiring him to get roofers out on a number of occasions to clean out the gutters, sweep debris off the roof and repair broken shingles. The plaintiff also testified he had bought the property in July of 1973, moved there in November of that year, and continued to reside there until the fall of 1976. He remained the owner of the then tenant-occupied property at the time of the September 4, 1979 trial. Pictures introduced in evidence, before and after trimming, establish that there were still many branches overhanging the house. Evidence was also introduced that plaintiff paid for the work of cleaning the gutters and down pipes on the entire main building, removing all debris and sweeping clean a metal valley in the rear. Scott further testified the situation with the tree has caused him apprehension regarding safety of tenants now residing in the property.
*1268 The defendant, who acquired his property in 1964, admitted the tree is approximately 50 feet tall and extends out in all directions and that there are limbs over the roof of the plaintiff's house. He also said the last time he had the tree trimmed was in July of 1979.
Lawrence Kuhn, who was recognized by the court as a tree expert, said the subject tree is a more than 50-year-old water oak which has surpassed its period of best growth and would soon be less vigorous in its response to attacks of decay and fungi. He added if a certain type of rot got into the large branch stubs at this advanced age it would be expected to accelerate decay, causing a hazardous situation due to its becoming more susceptible to "wind throw" and uprooting in severe winds or hurricanes.
Kenneth Wheeler, an expert in tree surgery, said leaves from the tree would fall on Scott's house primarily in late November and early December, and that the plaintiff's property would get perhaps 30 percent of the falling leaves with approximately 20 percent falling on his roof. Wheeler further stated if the tree were to be cut back to the property line, it would be susceptible to sun scald, which could cause large injuries or death. He added large cuts do not heal fast and the tree could become weakened and die, resulting in danger to both parties' properties. The finding of fact by the district court judgethat if the branches of the tree were cut back to the property line it would effectively destroy the treeis substantiated by the testimony of the two expert witnesses. LSA-C.C.P. art. 3601 also states an injunction shall issue where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law. LSA-C.C. art. 688 obviously provides that injunctive relief is available to a plaintiff landowner under this article in the form of demanding of his neighbor under certain circumstances that branches or roots be trimmed at the neighbor's expense. It is reasonable to infer, therefore, that the article also gives the right to injunctive relief to prevent roots or branches from interfering with a neighbor's enjoyment of his property as an alternative to actually ordering the branches or roots to be trimmed and certainly the choice of this alternate resolution is within the discretion of the trial court judge. Considering the age and beauty of the tree, as well as the finding of fact that severe cutting back of the large limbs to the property line would effectively destroy it and perhaps create a serious safety hazard to the properties of both parties, this court cannot find that the trial court judge abused his discretion in choosing this alternative resolution to the problem.
We find no error in the district judge's assessment of costs against the defendant.
For the reasons assigned, the trial court judgment is affirmed.
AFFIRMED.