Pete HASAPOPOULOS, and Helen Ha-
sapopoulos, Plaintiffs-Appellants,

v.

Joyce MURPHY, Defendant-Respondent.

No. 48781.

Missouri Court of Appeals,
Eastern District, Division One.

April 2, 1985.

David E. Wilson, Clayton, for plaintiffs-appellants.

William F. James, St. Louis, for defendant-respondent.

GAERTNER, Judge.

This case was instituted as a Chapter 517 suit for damages in a division of the circuit court presided over by an associate circuit judge where plaintiffs obtained a judgment. On trial de novo, the court, without a jury, found for defendant. We affirm.

In 1969, plaintiffs purchased their residence in St. Louis County. Defendant and her husband, who is now deceased, then owned and resided on the property adjoining that of plaintiffs. Three chinese elm trees were then growing on defendant's property close to the common boundary line. One tree was destroyed in a storm, but the remaining two have grown from 12 to 15 feet in height with trunks of 5 or 6 inches in diameter to 45 or 50 feet in height with 24 or 25 inch trunks. By 1974 plaintiffs began to experience problems from overhanging branches and cracking of their driveway caused by the roots of the elm trees. On three or four occasions over the ensuing years plaintiffs asked defendant and her husband to remedy the situation but received no cooperation. This action was then instituted. After judgment in the original proceeding, and two weeks prior to the trial de novo, plaintiffs paid $275.00 to have the tree branches cut back to the property line and $25.00 to have them hauled away. An expert witness testified the cost of repairing the root damage to plaintiffs' driveway would be $2,920.00. Plaintiffs testified the value of their property was diminished due to the problems of overhanging branches and the cracking of the driveway in the sum of $5,000.00.[1]

In the trial court and here, defendant's contention that plaintiffs failed to make a submissible case is founded on the distinction, set forth in the Restatement of Torts, Second, § 839 and 840, between the liability of the possessor of land for damages caused by an abatable, artificial condition and the non-liability for damages caused by a natural condition. A "natural condition" is one that is not in any way the result of human activity. Section 840, Comment to subsection 1. As applied to trees and other vegetation, the distinction is between a growth which results solely from nature and that which is created or cultivated by man. The rationale underlying this distinction is that one who has done nothing to cause a dangerous condition has no duty to remedy it, in contrast to one who has created or contributed to the existence of the condition. Because the evidence in this case is silent regarding the origination or cultivation of the chinese elms, defendant argues an essential prerequisite to plaintiffs' right of action is lacking.

Although some jurisdictions have applied the "natural/artificial" dichotomy as a test of liability in encroaching tree cases, e.g., Griefield v. Gibraltar, 24 So.2d 356 (Miss. banc 1946), it has been criticized and rejected by most. See Cornett v. Agee, 143 Ga.App. 55, 237 S.E.2d 522 (1977); Mahurin v. Lockhart, 7 Ill.App.3d 691, 28 Ill. Dec. 356, 390 N.E.2d 523 (1979); Rowe v. McGee, 5 N.C.App. 60, 168 S.E.2d 77 (1969); Barker v. Brown, 236 Pa.Super. 95, 340 A.2d 566 (1975); Sterling v. Weinstein, 75 A.2d 144 (D.C.App.1950). Among the varying reasons for rejecting the rule are the virtual impossibility of obtaining evidence concerning the origin of trees in many instances; the unfairness in imposing liability upon one who plants or nurtures a tree to a stately and aesthetic appearance while excusing one who neglectfully permits the

---

1. Although the monetary amount involved is small, this case is important to the litigants. Counsel for both parties, despite the relatively small amount involved, have briefed and argued this appeal with commendable zeal, thoroughness and ability. Their efforts represent the highest standards of the legal profession and are to be commended.

growth of unsightly scrubs; the problems inherent in assessing the effect of human intervention by watering, fertilizing, pruning, etc. For example, should one who treats a diseased or decayed natural tree be liable for the effects of its continued growth while one who does nothing escapes responsibility for the damages caused by its falling branches? A need for divergent application of the "natural/artificial" distinction depending upon locality has also been noted. In non-populous, rural areas the onerous burden of inspecting all vegetation upon large tracts of land to discover developing hazards from natural growth is said to override the slight potential for harm, whereas in urban areas the relative ease of discovery combined with the increased danger renders the converse true. *See Cornett v. Agee, supra*; Prosser, Law of Torts, 4th edition, page 355.

The only Missouri case to consider the liability of a landowner to his neighbor for property damage caused by encroaching trees is *Tanner v. Wallbrunn*, 77 Mo.App. 262 (1898). In the circuit court plaintiff obtained a mandatory injunction commanding the defendant to remove a tree, the branches of which were knocking bricks from plaintiff's chimney and causing holes in his roof. The appellate court reversed, holding that since plaintiff had the undoubted right to cut off the offending branches at the property line, it was his duty to do so before resorting to the extraordinary remedy of injunction. *Id.* at 266–67. Although the opinion does note that the tree was planted by defendant, the decision does not address the "natural/artificial" distinction and, therefore, is of no help in aligning Missouri with either of the divergent views upon Section 840 of the Restatement.

We believe the jurisdictions which have rejected this Restatement basis for distinguishing between liability and non-liability have done so for sound reasons, as set forth above. Moreover, in an action for damages resulting from a nuisance, responsibility flows not only from the creation of the nuisance, but from its continued main-

tenance as well. Therefore, we reject defendant's contention that proof of a landowner's planting or nurturing a tree is an essential element of a plaintiff's cause of action for damages to his property caused by encroachment of the tree roots and branches.

However, because we are primarily concerned with the correctness of the result below and not the route by which it was reached, *Girardeau Contractors, Inc. v. Missouri Highway and Transportation Commission*, 644 S.W.2d 360, 363 (1982), we affirm the judgment for defendant.

In addition to the divergent positions taken in other jurisdictions regarding the "natural/artificial" dichotomy, the condition of the tree is viewed by some courts, but not all, as the determinative factor of the liability of the owner of an encroaching tree which causes damage to neighboring property. A few jurisdictions impose such liability even where the tree is healthy and undecayed. *See Whitesell v. Houlton*, 2 Haw. 365, 632 P.2d 1077 (App.1981); *Shevlin v. Johnston*, 56 Cal.App. 563, 205 P. 1087 (1922). The better reasoned decisions, however, limit such liability to cases where the owner maintains a tree in a damaged, decayed or diseased condition.

In *Cornett v. Agee, supra*, recovery was allowed for damages sustained for the fall in a high wind of a 75 to 100 foot pine tree on the basis of the owner's actual knowledge of the visible rot in the trunk of the tree. The court limited its holding to cases involving trees with patent, visible decay.

The defendant in *Mahurin v. Lockhart, supra*, was liable for damages caused by the fall of a dead tree branch upon the plaintiff. The court held that "a landowner in a residential or urban area has a duty to others outside his land to exercise reasonable care to prevent an unreasonable risk of harm arising from *defective* or *unsound* trees on the premises, including trees of purely natural origin." 390 N.E.2d at 524–525 (emphasis added).

In *Rowe v. McGee, supra*, a decayed tree of which both plaintiff and defendant were aware fell from the defendant's lot onto

the plaintiff's house. The court rejected Section 840 of the Restatement, but ultimately affirmed the judgment for the defendant on the ground of the plaintiff's contributory negligence.

The defendant in *Barker v. Brown, supra,* knew or should have known that a tree on his land was in a decayed, rotting and dangerous condition and his failure to avert the danger led the court to hold him liable when the tree fell onto the plaintiff's property. The court stated, "[A] possessor of land in or adjacent to a developed or residential area is subject to liability for harm caused to others outside of the land by a *defect* in the condition of a tree thereon, if the exercise of reasonable care by the possessor (a) would have disclosed the defect and risk involved therein, and (b) would have made it reasonably safe by repair or otherwise." 340 A.2d at 569 (emphasis added).

The court in *Dudley v. Meadowbrooke, Inc.,* 166 A.2d 743 (D.C.App.1961), cited by plaintiffs, in holding the defendant to a negligence standard in maintaining trees, expressly noted evidence of the trees' decay.

Conversely, in *Michalson v. Nutting,* 275 Mass. 232, 175 N.E. 490 (1931), the roots of a healthy poplar tree growing on the defendant's land invaded the plaintiff's property. The roots clogged sewer and drain pipes, grew under the plaintiff's cement cellar, thereby cracking and crumbling the cement and threatened to injure the condition of plaintiff's dwelling. Nevertheless, the court held for defendant and limited the plaintiff to self-help. The court in *Sterling v. Weinstein, supra* in ruling for the defendant, stated "[O]ne whose land is invaded by branches and roots of trees or plants not poisonous or inherently injurious has no cause of action against the owner of such trees or plants, but may protect himself therefrom by cutting them off to the extent that they invade his property." 75 A.2d at 148. The majority noted that the plaintiff contended that the trees were leaning at a precarious angle, but ruled that the trial court had not accepted this contention. The dissent relied heavily on the allegedly defective nature of the tree in contending that the defendant should have been held liable.

*Tanner v. Walbrunn, supra,* would seem to align Missouri squarely among those jurisdictions which find no cause of action for damages to neighboring property caused by encroachment of the roots or branches of healthy trees, but leaves the plaintiff to his right of self-protection by cutting off the offending roots or branches at the property line. 77 Mo.App. at 266.

Here, plaintiffs adduced no evidence that the chinese elms were defective. One photograph, plaintiffs' Exhibit No. 5, does show a limb which had fallen during a storm. The color photograph, however, reveals that the branch was full of green leaves, hardly the sign of an unhealthy tree.

■ Application of the majority rule finding no liability upon the owner of a healthy tree results in no injustice in the instant case. Neither plaintiffs nor defendant committed a wrongful act. We are not inclined to find defendant acted unreasonably in permitting perfectly healthy trees to grow, and certainly defendant intended no harm thereby. The trees and their proximity to plaintiffs' land existed when plaintiffs purchased their residence. They must be charged with awareness of the potential effects of growing trees. Recourse to self-help to protect from damage and to eliminate annoyance from overhanging branches was available to plaintiffs for 15 years before they had the branches cut off at the property line. Imposition of liability upon the tree owner under such circumstances would create the potential for continuous controversy between neighbors and could promote harassment and vexatious litigation, disruptive of neighborhood serenity. Possible exposure to liability would warrant the uprooting of trees and shrubbery in proximity to boundary lines resulting in non-aesthetic barrenness.

■ The result reached by the trial court is analogous to and consistent with the

long established principle of law that in the absence of accumulation or diversion, the owner of land is not responsible for damages to neighboring property caused by the natural flow of water. *Reedy v. St. Louis Brewing Association*, 161 Mo. 523, 61 S.W. 859, 861 (1901). Thus, with water and as well as healthy trees, liability may not be predicated upon nothing more than letting nature take its course.

Judgment affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.