EDITH L. BANDY, a/k/a Edith L. Stucker, Plaintiff-Appellant, v. JAMES BOSIE *et al.*, Defendants-Appellees (Charles M. Bandy, Plaintiff).

Fourth District No. 4—84—0794

Opinion filed May 2, 1985.

Robert F. Scott, of Scott, Beeman & Scott, P.C., of Springfield, for appellant.

Anthony J. Manuele, of Springfield, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 22, 1982, plaintiffs, Edith L. and Charles M. Bandy, filed a four-count complaint in the circuit court of Sangamon County against defendants, James Bosie and Becky Bosie. The complaint alleged that (1) plaintiffs and defendants owned adjoining city lots; (2) certain maple and Chinese elm trees on defendants' lot dropped sap and leaves on plaintiffs' property, and roots from these trees have entered and damaged plaintiffs' sewer line, causing water to back up in their basement; and (3) the foregoing have caused plaintiffs substantial expenditures and have caused irreparable damage to plaintiffs' sewer line. Counts I and II sought injunctive relief, while counts III and IV sought damages. On October 28, 1984, the circuit court allowed defendants' motion to dismiss counts I and II for failure to state a cause of action. After the trial court made a finding pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), plaintiff Edith L. Bandy appealed. We affirm.

Plaintiff's theory as to counts I and II is that defendants' trees constitute a nuisance which is causing continuing damage to plaintiffs' property for which there is no adequate remedy at law. She contends

that defendants should be ordered to cut down the trees. Defendants maintain that the trees do not constitute a nuisance and that, in any event, plaintiff is not entitled to equitable relief. The two Illinois cases most closely in point are *Merriam v. McConnell* (1961), 31 Ill. App. 2d 241, 175 N.E.2d 293, cited by defendants, and *Mahurin v. Lockhart* (1979), 71 Ill. App. 3d 691, 390 N.E.2d 523, cited by plaintiff.

We consider first the earlier case of *Merriam*. There, the plaintiff sued for an injunction to restrain the defendants from growing box elder trees, as they annually became infested with box elder bugs which migrated to plaintiff's property. The court in that case found that the entire problem was one of natural origin and concluded that equity could not be used to control or abate natural forces as if they were a nuisance. The *Merriam* court discussed the fact that there were no allegations in that complaint that would support a finding of a nuisance, citing with approval the Massachusetts case of *Michalson v. Nutting* (1931), 275 Mass. 232, 175 N.E. 490, where it was stated that an owner of land is entitled to grow trees on any or all of his land and their natural growth reasonably will result in extension of roots and branches into adjoining property. The Massachusetts court dismissed a suit for injunction where roots clogged the sewer of an adjoining landowner.

The *Merriam* court concluded that (1) the effects of nature such as the growth of tree roots cannot be held within boundaries; (2) the risk of damage from roots on other lots is inherent in suburban living; and (3) to allow suits of this nature would bring about substantial litigation over matters that should be worked out between the lot owners. *Merriam v. McConnell* (1961), 31 Ill. App. 2d 241, 244, 175 N.E.2d 293, 295.

The *Mahurin* court took a somewhat different approach. There, the plaintiff sued an adjoining lot owner for damages resulting when a dead limb on a tree on defendant's property fell on plaintiff's property, injuring plaintiff. The complaint was held to state a cause of action. The defendant contended that she had no liability for damages occurring off of her land resulting from the existence of natural conditions on her land. The appellate court rejected that view as being outmoded. The court described that earlier theory as arising from an era when most land was heavily wooded and sparsely settled and when the burden of inspecting those larger properties for natural defects would have been unreasonable. In a more modern urban setting, the court considered the burden of inspecting for unsound trees which might injure persons off of the owners' property to be reasonable.

The *Mahurin* decision appears to be in line with a trend to place

greater responsibility upon the owner of the lot where the tree is located. Several decisions indicating the trend were cited in *Mahurin*. (See *Barker v. Brown* (1975), 236 Pa. Super. 75, 340 A.2d 566; *Dudley v. Meadowbrook, Inc.* (D.C. App. 1961), 166 A.2d 743.) However, as pointed out in a leading text on torts (Prosser, Torts sec. 57, at 391 (5th ed. 1984)), most of these cases concern situations where, unlike under the allegations here, the tree is in a dangerous condition.

There is mention of a situation such as complained of by the Bandys in Restatement (Second) of Torts (1979). An illustration is given to section 840 whereby one landowner takes possession of property on which certain trees have been planted whose roots grow into a neighbor's land, causing the neighbor injury. The trees in this instance are said not to be a natural condition as they have been planted and, therefore, qualify as a nuisance which can subject the trees' owner to liability if abatable. (Restatement (Second) of Torts sec. 840, comment *a*, illustration 4 (1979).) The complaint here is silent as to when and how the trees gained life. That is one reason why we conclude that the complaint fails to allege a nuisance.

In addition, even if counts I and II had stated that the allegedly offending trees had been planted, the counts would still have failed to state a cause of action for injunctive relief. We do not consider trees that drop leaves on neighboring lands or trees that send out roots that migrate to neighboring lands and obstruct drainage to necessarily constitute a nuisance. We recognize that some decisions in other States are to the contrary. (*Holmberg v. Bergin* (1969), 285 Minn. 250, 172 N.W.2d 739; *Mattos v. Mattos* (1958), 162 Cal. App. 2d 41, 328 P.2d 269; *Forbus v. Knight* (1945), 24 Wash. 2d 297, 163 P.2d 822.) However, we note that here, unlike in *Mahurin* and in *Fabbri v. Regis Forcier, Inc.* (1975), 114 R.I. 207, 330 A.2d 807, there is no allegation that the trees constituted a danger or that they were negligently maintained. We agree with the *Merriam* court that, under the circumstances here, to permit the falling of leaves or the migration of the roots to give rise to injunctive relief would unduly promote litigation over relatively minor matters. Usually, the damage from the offending leaves would be minimal, and the accurate locating of the source of the offending roots would be difficult and expensive.

Accordingly, we agree with the trial court that counts I and II should have been dismissed. We affirm its decision to do so.

Affirmed.

TRAPP and MORTHLAND, JJ., concur.