540 A.2d 1133

**Jonathan MELNICK**

**v.**

**C.S.X. CORPORATION et al.**

**No. 112, Sept. Term, 1986.**

Court of Appeals of Maryland.

May 6, 1988.

Richard W. Winelander, Lutherville (Barry T. Canaras, Melvin J. Kodenski and Kodenski & Canaras, on brief), Baltimore, for appellant.

Stephen B. Caplis (H. Russell Smouse and Melnicove Kaufman, Weiner, Smouse & Garbis, P.A. and Richard C. Keene, on brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, COUCH* and McAULIFFE, JJ., and MARVIN H. SMITH and CHARLES E. ORTH, Jr., Associate Judges of the Court of Appeals of Maryland (Retired), Specially Assigned.

ELDRIDGE, Judge.

This case presents an issue never before decided by this Court: whether a landowner has a cause of action against an adjoining landowner when trees, vines, roots, and other plants or plant debris from the adjoining landowner's property encroach upon and cause damage to the landowner's property.

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## I.

The relevant facts are as follows.[1]  In 1978, the plaintiff Johnathan Melnick purchased a tract of land situated in the City of Baltimore, known as 900–920 East 25th Street.  The Melnick property shares a common boundary with a railroad right-of-way owned by the defendant Baltimore and Ohio Railroad Company.[2]  On the Melnick property, near the common boundary, stands a large building used as a warehouse.

At the time Melnick purchased this property, the building's roof was in poor condition, and Melnick subsequently replaced the roof.  Since the roof replacement, Melnick has experienced constant clogged drains, standing water, roof deterioration and some water damage to stored merchandise.  These problems result from leaves and limbs falling on his property from the Railroad's trees, and from vines and other plant life encroaching on his property from the Railroad's right of way.  Melnick attempted to remedy this situation by cleaning the gutters on several occasions and cutting back the growth.  He complains, however, that these attempts at "self-help" have been unsuccessful since the trees and vines have grown back and require constant maintenance.  Melnick informed the Baltimore and Ohio Railroad of the damage to his building caused by the plants on the Railroad property.

Melnick brought this action in the Circuit Court for Baltimore City, seeking damages for the injury done to his property as a result of the branches and leaves falling from the Railroad's trees and the encroaching vines, shrubs, and other plant life from the adjacent property.  Melnick's

---

1.  The facts were stipulated to, for purposes of summary judgment, in the trial court.  In the Court of Special Appeals and in this Court, the parties filed an agreed statement of facts.

2.  While the CSX Corporation was also named as a defendant, the parties stipulated in the trial court that CSX does not own the right of way involved in this case, and that the real party in interest at all times pertinent to this litigation is the Baltimore and Ohio Railroad Company.

action was based on theories of trespass, negligence, and nuisance.

Following discovery the defendants moved for summary judgment contending that, as a matter of law, the Baltimore and Ohio Railroad had no duty to prevent harm to another's property caused by the encroachment of vegetation. Consequently, the defendants argued, Melnick is limited to self-help. Melnick, in opposing the motion, urged the circuit court to adopt a rule imposing upon the Railroad a duty to prevent encroachment of vegetation. The circuit court granted the defendants' motion for summary judgment, holding that the plaintiff is limited to a self-help remedy.

Melnick appealed to the Court of Special Appeals, which affirmed. *Melnick v. C.S.X. Corp.,* 68 Md.App. 107, 108, 510 A.2d 592, 592 (1986). The Court of Special Appeals held that, under the circumstances, Melnick had no cause of action against the adjoining landowner. The appellate court reasoned that the remedy of "self-help" is generally the most efficient way in which to prevent injury from occurring to property due to encroaching vegetation. 68 Md. App. at 116, 510 A.2d at 597. We granted the plaintiff's petition for a writ of certiorari, and we shall affirm.

## II.

The matter of a landowner's remedy for conditions on his property due to encroaching vegetation or falling plant debris from adjoining property has been the focus of many cases throughout the country, and various rules have developed to govern the situation. Courts uniformly hold that a landowner has a self-help remedy. Thus, the landowner has a right to cut encroaching branches, vines, and roots back to the property line. *See, e.g., Drummond v. Franck,* 252 Ala. 474, 479, 41 So.2d 268, 273 (1949); *Cannon v. Dunn,* 145 Ariz. 115, 116, 700 P.2d 502, 503 (Ct. of App. 1985); *Bonde v. Bishop,* 112 Cal.App.2d 1, 5, 245 P.2d 617, 620 (1952); *Robinson v. Clapp,* 65 Conn. 365, 377, 32 A. 939, 941 (1895); *Sterling v. Weinstein,* 75 A.2d 144, 148 (D.C.1950); *Gallo v. Heller,* 512 So.2d 215, 216 (Fla.App.

1987); *Whitesell v. Houlton,* 2 Hawaii.App. 365, 368, 632 P.2d 1077, 1079 (1981); *Lemon v. Curington,* 78 Idaho 522, 524, 306 P.2d 1091, 1092 (1957); *Toledo, St. Louis and Kansas City Railroad Company et al. v. Loop,* 139 Ind. 542, 544–545, 39 N.E. 306, 307 (1894); *Pierce v. Casady,* 11 Kan.App.2d 23, 711 P.2d 766, 767 (1985); *Holmberg v. Bergin,* 285 Minn. 250, 257, 172 N.W.2d 739, 744 (1969); *Jurgens v. Wiese,* 151 Neb. 549, 554, 38 N.W.2d 261, 263 (1949); *Wegener v. Sugarman,* 104 N.J.L. 26, 29, 138 A. 699, 700 (1927); *Loggia v. Grobe,* 128 Misc.2d 973, 974, 491 N.Y.S.2d 973, 974 (1985); *Granberry v. Jones,* 188 Tenn. 51, 55, 216 S.W.2d 721, 722–723 (1949); *Cobb v. Western Union Telegraph Co.,* 90 Vt. 342, 344, 98 A. 758, 759 (1916). *See also,* 2 Tiffany, *Real Property* § 603 (3d ed. 1939); Wood, *Law of Nuisances* § 108 (2d ed. 1883).[3]

With regard to self-help, the landowner is generally limited to cutting back growth to the property line; he may not enter the adjoining landowner's property to chop down a tree or cut back growth without his neighbor's consent. *See, e.g., Bonde v. Bishop, supra,* 112 Cal.App.2d at 5, 245 P.2d at 621; *Sterling v. Weinstein, supra,* 75 A.2d at 148; *Toledo, St. Louis and Kansas City Railroad Company et al. v. Loop, supra,* 139 Ind. at 545, 39 N.E. at 307; *Luke v. Scott,* 98 Ind.App. 15, 17–18, 187 N.E. 63, 63–64 (1933); *Pierce v. Casady, supra,* 11 Kan.App.2d 23, 711 P.2d at 767; *Hasapopoulos v. Murphy,* 689 S.W.2d 118, 120 (Mo. App.1985); *Jurgens v. Wiese, supra,* 151 Neb. at 554, 38 N.W.2d at 263; *Wegener v. Sugarman, supra,* 104 N.J.L. at 29, 138 A. at 700; *Turner v. Coppola,* 102 Misc.2d 1043,

---

**3.** While this Court has not previously discussed a landowner's self-help remedy with regard to encroaching vegetation or plant debris from adjoining property, we have implicitly recognized that a self-help remedy exists. In *Washington County v. Gaylor,* 140 Md. 375, 117 A. 864 (1922), this Court held that the County as owner of a road had a duty under certain circumstances to cut a decayed tree limb which was encroaching from a tree on adjoining property and which was overhanging the County's road. If a landowner has a duty to exercise self-help under some circumstances, the landowner obviously has a self-help remedy.

424 N.Y.S.2d 864, 867, *aff'd*, 78 A.D.2d 781, 434 N.Y.S.2d 563 (1980). *See also* Maryland Code (1974, 1983 Repl.Vol.), § 5–409 of the Natural Resources Article.

Although courts generally agree that there is a self-help remedy, they diverge with regard to the availability of any remedy beyond self-help.

In the present case, both the circuit court and the Court of Special Appeals applied what has become known as the "Massachusetts Rule," which limits the adjoining landowner's remedy to self-help under almost all circumstances. In *Michalson v. Nutting*, 275 Mass. 232, 175 N.E. 490 (1931), the plaintiffs brought suit seeking injunctive relief as well as damages for the harm caused by the roots of a poplar tree that had clogged plaintiffs' sewer and damaged the foundation of their house. The Supreme Judicial Court of Massachusetts reasoned that limiting the plaintiffs to self-help was the most efficient and most equitable way to resolve the problem. The court stated (275 Mass. at 234, 175 N.E. at 491):

"His remedy is in his own hands. The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious."

*See also, Ponte v. DaSilva*, 388 Mass. 1008, 446 N.E.2d 77 (1983).

Several other courts have limited a landowner to a self-help remedy. In *Schwalbach v. Forest Lawn Memorial Park*, 687 S.W.2d 551, 552 (Ky.App.1985), the court followed the "Massachusetts Rule," noting that to impose liability "for damage resulting from the natural dropping of leaves and other ordinary debris would result in innumerable lawsuits and impose liability upon a landowner for the natural processes and cycles of trees." *See Richmond v.*

*General Engineering Enterprises Co.*, 454 So.2d 16, 17 (Fla.App.1984); *Bandy v. Bosie*, 132 Ill.App.3d 832, 834, 87 Ill.Dec. 714, 716, 477 N.E.2d 840, 842 (1985); *Hasapopoulos v. Murphy, supra*, 689 S.W.2d 118; *Cannon v. Neuberger*, 1 Utah.2d 396, 399, 268 P.2d 425, 427 (1954). *See also, Langer v. Goode*, 21 N.D. 462, 131 N.W. 258 (1911); *Gulf, C. & S.F. Ry. Co. v. Oakes*, 94 Tex. 155, 58 S.W. 999, 1001 (1900).

The Restatement (Second) of Torts (1977) has adopted a rule which limits the landowner to self-help when the encroaching trees, plants, and vines are "natural." *See* § 840. The Restatement, however, imposes a duty under certain circumstances upon an adjoining landowner to abate the condition when the encroaching vegetation is "artificial," and subjects the adjoining landowner to liability for failure to abate the "artificial condition." *See* § 839.[4] Vegetation is deemed "natural" when it is "not in any way the result of human activity." Restatement (Second) of Torts, § 840, comment a. Illustration 4 under comment a provides an example:

"4. A purchases and takes possession of land on which have been planted a number of eucalyptus trees near the boundary line of B's land. The roots of the eucalyptus trees grow into B's land, with the result that walnut trees growing thereon are stunted and otherwise damaged. Although A knows of this, he does not cut down the eucalyptus trees. A is subject to the rule stated in § 839, since the eucalyptus trees are not a natural condition."

---

**4.** Section 839 of the Restatement (Second) of Torts provides:
"**§ 839.** Possessor Who Fails to Abate Artificial Condition
A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
(a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
(b) he knows or should know that it exists without the consent of those affected by it, and
(c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it."

Although a few states follow the Restatement Rule, most do not.[5] In refusing to follow the Restatement Rule, a few courts have commented that the distinction between "artificial" and "natural" vegetation is unworkable, and should not control the question of a landowner's duty. For example, in *Sterling v. Weinstein*, 75 A.2d 144 (D.C.1950), the District of Columbia refused to follow the Restatement, stating (75 A.2d at 147):

"[W]e suspect that ... it would be difficult and perhaps impossible to determine if the trees are of natural growth. And again, we think it would often be difficult to ascertain whether a tree of natural growth might not be in part the result of human activity, such as cultivating, fertilizing, trimming, etc. The distinction between purely natural conditions and conditions which in some degree are the result of man's activity ... cannot reasonably be made in our jurisdiction which is almost entirely urban."

Similarly, the Pennsylvania court, in *Harvey v. Hansen*, 299 Pa.Super. 474, 480–481, 445 A.2d 1228, 1231 (1982), criticized the Restatement rule:

"The 'natural condition' standard for imposing or not imposing liability creates the anomalous situation of imposing liability on a landowner who improves and maintains his property while precluding liability of a neighboring landowner who allows the 'natural condition' of his property to run wild. Under this analysis, landowner A may plant hedges or bushes around the perimeter of his property and if they are allowed to become too thick or too tall so as to obstruct a motorist's vision of an intersection, he will be held liable. Landowner B, on the other

---

**5.** For cases consistent with the Restatement Rule, *see Ken Cowden Chevrolet, Inc. v. Corts,* 112 Mich.App. 570, 573, 316 N.W.2d 259, 261 (1982); *Holmberg v. Bergin,* 285 Minn. 250, 257–258, 172 N.W.2d 739, 744 (1969); *Griefield v. Gibraltar Fire & Marine Ins. Co.,* 199 Miss. 175, 180–181, 24 So.2d 356, 357–358 (1946); *Buckingham v. Elliott,* 62 Miss. 296 (1884). *Cf. Wells v. Chicago & North Western Transp. Co.,* 98 Wis.2d 328, 296 N.W.2d 559 (1980).

hand, may neglect his property, allowing it to be overrun and overgrown with weeds, plants, grasses and other natural foilage, to an equal or greater detriment to passing motorists, but with no liability to himself. The distinction appears to be arbitrary at best."

*See also Sprecher v. Adamson Companies,* 30 Cal.3d 358, 636 P.2d 1121, 178 Cal.Rptr. 783 (1981); *Hasapopoulos v. Murphy, supra,* 689 S.W.2d at 119–120; *Barker v. Brown,* 236 Pa.Super. 75, 340 A.2d 566 (1975).

What has been called the "Virginia Rule" [6] provides that a landowner is limited to a self-help remedy unless the tree or plant is "noxious." *Smith v. Holt,* 174 Va. 213, 5 S.E.2d 492 (1939). *See also Cannon v. Dunn,* 145 Ariz. 115, 700 P.2d 502 (Ct. of App.1985). In *Smith,* the Virginia Court held that if injury has been "inflicted by the protrusion of roots from a noxious tree or plant onto the land of another, he has, after notice, a right of action at law," 5 S.E.2d at 495. Few states have followed this rule. Part of the reason may be the difficulty of determining exactly what is a "noxious" tree or plant.[7]

The rule contended for by Melnick is the "Hawaiian Rule," based on the decision of the Hawaiian intermediate appellate court in *Whitesell v. Houlton,* 2 Hawaii App. 365, 632 P.2d 1077, 1079 (1981). This rule imposes liability upon the adjoining landowner if the trees, plants, roots, or vines cause "harm ... in ways other than by casting shade or dropping leaves, flowers, or fruit." [8] *Whitesell, supra,* 2

---

**6.** *See Whitesell v. Houlton,* 2 Hawaii App. 365, 632 P.2d 1077, 1079 (1981).

**7.** The District of Columbia Court, in *Sterling v. Weinstein,* 75 A.2d 144, 147 (1950), commented: "There is some confusion ... as to whether a tree or plant is 'noxious' merely because it does injury or whether it must be inherently injurious or poisonous." *See also, Buckingham v. Elliott,* 62 Miss. 296, 301 (1884).

**8.** The following cases, for the most part, appear to employ the approach adopted by the Hawaii court and grant the landowner a remedy for damages caused by encroaching vegetation: *Chandler v. Larson,* 148 Ill.App.3d 1032, 102 Ill.Dec. 691, 500 N.E.2d 584 (1986);

Hawaii App. 365, 632 P.2d 1077. Whether damages will be awarded depends on the extent and cause of the injury.

Among the various rules discussed, and in the absence of relevant statutory provisions,[9] we agree with both courts below that the Massachusetts Rule is preferable. As previously discussed, the Restatement and the Virginia rules depend upon distinctions which are vague, difficult to apply, and largely arbitrary. To some extent, this is also true of the Hawaiian approach urged by Melnick.

In addition, as pointed out by the Supreme Judicial Court of Massachusetts in *Michalson v. Nutting, supra,* 275 Mass. at 234, 175 N.E. at 491, to grant a landowner a cause of action every time tree branches, leaves, vines, shrubs, etc., encroach upon or fall on his property from his neighbor's property, might well spawn innumerable and vexatious lawsuits. We have gotten along very well in Maryland, for over 350 years, without authorizing legal actions of this type by neighbor against neighbor.

Moreover, we believe that it is undesirable to categorize living trees, plants, roots, or vines as a "nuisances" to be

*Pierce v. Casady,* 11 Kan.App.2d 23, 711 P.2d 766 (1985); *Toledo, St. Louis and Kansas City Railroad Company v. Loop,* 139 Ind. 542, 39 N.E. 306 (1894); *Abbinett v. Fox,* 103 N.M. 80, 703 P.2d 177 (Ct. of App.), *cert. quashed,* 103 N.M. 62, 702 P.2d 1007 (1985); *Turner v. Coppola,* 102 Misc.2d 1043, 424 N.Y.S.2d 864 (1980); *Rautsaw v. Clark,* 22 Ohio App.3d 20, 488 N.E.2d 243 (1985). *See also Butler v. Standard Telephones and Cables, Ltd.,* 1 K.B. 399 (1939); *Smith v. Giddy,* 2 K.B. 448 (1904); Noel, *Nuisance from Land in its Natural Condition,* 56 Harv.L.Rev. 772 (1943).

9. In several jurisdictions, the approaches taken by the courts appear to be governed, at least in part, by statutory provisions. *See, e.g., Shevlin v. Johnston,* 56 Cal.App. 563, 205 P. 1087 (1922); *Stevens v. Moon,* 54 Cal.App. 737, 202 P. 961 (1921); *Grandona v. Lovdal,* 70 Cal. 161, 11 P. 623 (1886); *Lemon v. Curington,* 78 Idaho 522, 306 P.2d 1091 (1957); *Scott v. Ramos,* 399 So.2d 1266 (La.App.), *cert. denied,* 404 So.2d 279 (1981); *Fontenot v. Central Louisiana Electric Company,* 147 So.2d 773 (La.App.1962); *Tissot v. Great Southern Telephone & Telegraph Co.,* 39 La.Ann. 996, 3 So. 261 (1887); *Holmberg v. Bergin,* 285 Minn. 250, 172 N.W.2d 739 (1969); *Mead v. Vincent,* 199 Okla. 508, 187 P.2d 994 (1947); *Forbus v. Knight,* 24 Wash.2d 297, 163 P.2d 822 (1945); *Gostina v. Ryland,* 116 Wash. 228, 199 P. 298 (1921).

abated. Consequently, we decline to impose liability upon an adjoining landowner for the "natural processes and cycles" of trees, plants, roots, and vines. As the New York court stated in *Turner v. Coppola, supra,* 102 Misc.2d at 1046, 424 N.Y.S.2d at 867: "Indeed, such natural growth and shedding processes of trees are inherent ..., and to most people constitute a pleasurable reflection of seasonal changes." *See also Sterling v. Weinstein, supra,* 75 A.2d at 147 ("overhanging branches which merely cast shade or drop leaves on the land are not nuisances"); *Hay v. Norwalk Lodge No. 730, B.P.O.E.,* 92 Ohio App. 14, 20, 109 N.E.2d 481, 484 (1951) ("To grow a tree is a natural act of the soil. It is not itself a dangerous instrumentality").

In cases such as these, the landowner must assume responsibility for the care and preservation of his own property. Along with the benefits derived from property ownership come certain obligations. Proper maintenance of one's own property is one of these obligations.[10]

---

**10.** While not involved in this case, we note that there may be an exception to the Massachusetts Rule for dangerous dead trees. Several jurisdictions, which generally limit a landowner to a self-help remedy, do not appear to apply this limitation to dead trees. *See, e.g., Ponte v. DaSilva,* 388 Mass. 1008, 1008, 446 N.E.2d 77, 78 (1983); *Kurtigian v. Worcester,* 348 Mass. 284, 203 N.E.2d 692 (1965); *Schwalbach v. Forest Lawn Memorial Park,* 687 S.W.2d 551, 552 (Ky.App. 1983). Practical considerations may, under these circumstances, limit the effectiveness of the self-help remedy. Consequently, under certain circumstances, a duty might be imposed upon a landowner on whose property the dead tree stands to take reasonable steps to prevent injury to his neighbors or passersby. As the Kentucky court stated in *Schwalbach, supra,* 687 S.W.2d at 552:

"Although the landowner may have the right to cut back overhanging branches to the boundary line, in the case of a dead and dangerous tree, it may be more sensible to require the owner of the tree to remove it in its entirety, or be liable for damages. It would be futile to require the neighbor to remove a portion of the tree to the boundary line leaving the hazard of a large portion of the total tree to remain in a threatening position."

For cases discussing this matter, *see Dudley v. Meadowbrook,* 166 A.2d 743 (D.C.1961), *Cornett v. Agee,* 143 Ga.App. 55, 237 S.E.2d 522 (1977); *Lemon v. Edwards,* 344 S.W.2d 822 (Ky.1961); *Taylor v. Olsen,* 282 Or. 343, 578 P.2d 779 (1978); *Rowe v. McGee,* 5 N.C.App. 60, 168 S.E.2d 77

JUDGMENT OF THE COURT OF SPECIAL APPEALS
AFFIRMED. PETITIONER TO PAY COSTS.

(1969); *Barker v. Brown*, 236 Pa.Super. 75, 340 A.2d 566 (1975); *Fabbri v. Regis Forcier, Inc.*, 114 R.I. 207, 330 A.2d 807 (1975).

As previously indicated, we have no occasion in the present case to reach the question of whether, and to what extent, there may be a remedy beyond self-help for injury caused by a dead tree.