Captain John W. BOOKHULTZ and
Gay Bookhultz, his wife, Plaintiffs,

v.

MARYLAND MIDLAND RAILWAY,
INC., Defendant and Third
Party Plaintiff,

v.

Delmar R. HORNER and Margaret M.
Horner, Third Party Defendants.

Civ. No. S 87–2747.

United States District Court,
D. Maryland.

July 27, 1988.

George W. Shadoan, Susan Vogel Sala-doff, Shadoan and Michael, Rockville, Md., Stanley E. Sacks, Norfolk, Va., for plaintiffs.

Charles M. Chadwick, Chadwick & Whaley, Rockville, Md., for Maryland Midland defendant & third party plaintiff.

Ileen M. Ticer, Wiley & Engel, Baltimore, Md., for Horners—third party defendants.

MEMORANDUM

SMALKIN, District Judge.

Plaintiffs, Captain John W. Bookhultz and his wife Gay Bookhultz, brought suit against Maryland Midland Railway, Inc. (Maryland Midland) for an eye injury Mr. Bookhultz sustained from a fallen tree's limb while he and his wife were passengers on a Maryland Midland train. Maryland Midland then filed a third party complaint for indemnity and contribution against Delmar Horner and Margaret Horner (the Horners), on whose property, adjoining the railroad, the tree had grown. The Horners have moved for summary judgment. Maryland Midland has responded to the motion. No oral hearing is necessary. Local Rule 6, D.Md.

To withstand a properly made motion for summary judgment, a plaintiff must present sufficient evidence to allow a reasonable fact finder to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

I. *Factual Summary*

While Captain Bookhultz and his wife were passengers in an open gondola car of a train owned and operated by Maryland Midland, Captain Bookhultz sustained eye injuries when struck by the top of a dead tree, which was overhanging the tracks and supported at a 45 degree angle by underbrush and bushes. The tree had grown (and died) on the Horners' wooded property adjacent Maryland Midland's right-of-way. Maryland Midland is a short-line freight road that offers regularly scheduled and special passenger excursions, such as the one Captain Bookhultz was riding.

II. *Discussion*

The underlying issue in the third party action is whether an owner of wooded property has any duty to inspect his land for decaying or dead trees in order to prevent

possible injury to persons or property on adjoining lands. Cases involving man *vs.* tree focus, first, on whether the tree is dead or alive and, then, on whether the owner has actual or constructive knowledge of a potentially dangerous situation *or* whether the land on which the tree stands is urban or rural.

The most recent Maryland ruling in a man-tree encounter (on which the Horners partially rely) absolves the property owner of liability for damage caused by limbs and leaves straying onto neighboring property and limits the neighbor to self-help, reasoning that a landowner has no duty to prevent harm to another's property caused by encroaching vegetation and that the neighbor must assume responsibility for his own property. *Melnick v. C.S.X. Corporation,* 312 Md. 511, 540 A.2d 1133 (1988). The court feared that imposing liability on a landowner for the results of the natural growth processes of trees would spawn "innumerable and vexatious lawsuits." *Melnick,* 312 Md. at 520, 540 A.2d at 1138.

However, the claim in *Melnick* clearly concerned a living, albeit trespassing, tree; the court noted that there

> may be an exception for … dangerous dead trees…. Practical considerations may … limit the effectiveness of the self-help remedy. Consequently, under certain circumstances, a duty might be imposed upon a landowner on whose property the dead tree stands to take reasonable steps to prevent injury to his neighbors or passersby.

312 Md. at 521, n. 10; 540 A.2d at 1138 n. 10. *Melnick* also cites *Schwalbach v. For-* *est Lawn Memorial Park,* 687 S.W.2d 551, 552 (Ky.App.1983), where, while finding no owner liability for offending live trees, the court noted it "might reach a different result if the tree was known, or should be known, to be so rotten so as to cause a serious threat or nuisance to adjoining property…." *Schwalbach,* 687 S.W.2d at 552.

With apologies to Mark Twain, reports of this tree's death have not been exaggerated. Photographs demonstrate that this tree, lying at a 45 degree angle, with upturned, rotted roots and without bark or foliage (so that even its species is indiscernible), is, and has been for a long time, quite dead. The inescapable inference is that it was dead when part of it struck Captain Bookhultz in the eye.

In Maryland, the bellwether case featuring dead trees is *Hensley v. Montgomery County,* 25 Md.App. 361, 334 A.2d 542 (1975). In *Hensley,* the plaintiff, driving to work along a rural road, was seriously injured when a limb from a decaying tree bordering the road fell through his windshield. *Hensley* held that an owner of rural or suburban forest land is not liable for damage done by dead tree limbs falling onto the property or persons of others unless the tree constitutes a danger to lawful users of abutting public roads *and* the owner is aware or should be aware of the tree's deteriorated condition. Essentially, even for decaying or dead trees, a landowner is not liable if (a) he has no notice of his tree's propensity for harm and (b) his tree is rural or suburban/rural (in contrast to an urban tree).[1]

---

**1.** Other jurisdictions faced with damage wrought by dangerous dead trees have assessed liability on similar standards. *Dudley v. Meadowbrook,* 166 A.2d 743 (D.C.1961) (tree had no visible rot, but prior surgery for (and filling of) inside hole served to put owners on notice for further duty to inspect; treeowner held liable for negligence); *Rowe v. McGee,* 5 N.C.App. 60, 168 S.E.2d 77 (1969) (landowner advised on at least two occasions prior to accident of rotted, bee-filled tree; treeowner held liable); *Taylor v. Olsen,* 282 Or. 343, 578 P.2d 779 (1978) (tree's inner rot was not visible so as to reasonably put owner on notice; treeowner not held liable); *Kurtigian v. Worcester,* 348 Mass. 284, 203 N.E. 2d 692 (1965) (urban tree's prior loss of bark and limbs and Parks Department's affirmation of potential danger made harm forseeable and put owner on notice; tree held to be a private nuisance in an urban area and treeowner held liable); *Cornett v. Agee,* 143 Ga.App. 55, 237 S.E.2d 522 (1977) (prior advice to remove leaning tree with visible rot in urban setting combined to hold treeowner liable); *Barker v. Brown,* 236 Pa.Super. 75, 340 A.2d 566 (1975) (in a case of tree vs. tree, an obviously rotted, residential tree fell over taking two of neighbor's trees with it; treeowner in residential district liable for lack of reasonable care); *Lemon v. Edwards,* 344 S.W.2d 822 (Ky.1961) (offending dead tree stood on densely wooded, rural

Maryland Midland's tracks are not visible from the Horners' house; the Horners had never visited the track area prior to the accident (except possibly at the time of purchase in 1969); and, the Horners had received no complaints of dead vegetation to put them on actual notice prior to the incident. In fact, Dr. Stookey, an engineer on a freight train operated by Maryland Midland,[2] testified in deposition that on a run by the site only three days before the accident, he saw no limbs obstructing the right-of-way. (Paper No. 23, Exhibit 2, at 216). Maryland Midland has not provided sufficient evidence to allow a reasonable fact-finder to conclude that the Horners had actual knowledge of the decayed tree.

The question of constructive notice arising out of a duty to inspect is bound up inevitably with the nature of the premises on which the tree stood. This Court's synthesis of the cases is that they impose a burden of inspection on urban tree-owners, either because they are more reasonably to be expected to see their trees on a regular basis, or because the heightened danger to unsuspecting urbanites (as compared to rural passersby) requires such higher duty as a matter of public policy. The singular remaining issue, then, is whether the Horners escape liability by virtue of their non-urban environment. *Hensley* distinguishes the liability of city dwellers from that of owners of rural lands and suburban forests. An urban dweller, responsible for only a few trees, which he can easily and regularly inspect, has the duty to use reasonable care, under ordinary negligence standards, for the safety of others. This puts the urban landowner on constructive notice of dangerous tree conditions, because constructive notice involves notions of reasonable inspection naturally concurrent with the exercise of reasonable care. However, *Hensley* notes that an urban dweller's duty is an exception to the law's tradition of not imposing on a rural landowner the impractical burden of inspecting property bordering a little-used road; without notice, treeowner not liable for falling limbs).

every tree for potential danger. *Hensley,* 25 Md.App. at 366, 367; 334 A.2d at 545.

The difficulty arises in what *Hensley* refers to as the "suburban forest," the grey area between urban and rural classifications. *Hensley* explicitly does not extend the urban duty-to-inspect to the suburban forest, absent actual or constructive knowledge of a dangerous condition. In addition, *Hensley* held that liability "becomes a question of the nature of the locality, the seriousness of the danger, and the ease with which it may be prevented." *Hensley,* 25 Md.App. at 366, 334 A.2d at 545 (quoting W. Prosser, *Law of Torts,* (3rd ed.) § 57, at 362–363). It found that the secondary nature of the road with its surrounding natural woodland presented too unlikely a danger to persons to impose owner liability without actual or constructive knowledge. *Hensley* concluded

> [w]e cannot conceive ... that the Court of Appeals intended to direct that every such case leave to a jury the question of the [landowner's] duty to inspect and ascertain defects occasioned by natural causes without regard to the use of the road or population pressures of the countryside.

25 Md.App. at 370, 334 A.2d at 547.

The material facts of this case are not in dispute, only their legal interpretation. The Court is convinced that applying *Hensley* relieves the Horners of a duty to inspect their trackside property for dead or dying trees. The Horners own approximately 10 acres, eight of which remain in a natural state, replete with large trees, saplings, briers, and honeysuckle; this includes the land which abuts the railroad's right-of-way. Deponents testifying to the wooded, rural depiction of the territory include the Horners, Captain Bookhultz and his son, two other passengers on the train, and Maryland Midland's engineer, Dr. Stookey. The few houses in the vicinity, none visible from the accident site, are mostly deserted, and the area all along the pertinent portion of the track is farmland, wood-

---

2. Perhaps it is indicative of Maryland Midland's status among railroads that one of its freight engineers is entitled "Doctor."

ed land, or operating quarries. (The quarries themselves are rural industries.) The railroad is a shortline freight and tourist road, not a mainline carrier. The entire nature of the locality is fundamentally rural; vegetation close along such a right-of-way is to be expected, and, in fact, photographs show that the natural growth bordering the track at the site of the accident barely allows the train's passage. (Paper No. 23, Exhibits 9, 10).

As in *Hensley*, the facts do not provide sufficient cause to justify an expansion of the urban inspection duty. The likelihood of such an accident in such a setting is relatively small; it is unreasonable to impose on the Horners the burden to patrol wooded acreage bordering a rural railroad right-of-way, especially when the railroad's personnel, who travel and see the route often, are in a far better position to guard against obstructions on or adjacent to the tracks. (Under Maryland law, Maryland Midland has the right to a self-help remedy. *Melnick*, 312 Md. 511, 540 A.2d 1133.) Furthermore, the Court does not wish to encourage clogging the nation's railways with rural landowners inspecting their trackside properties from handcars or velocipedes.

In view of the preceeding discussion, the Court need not address the parties' proximate cause arguments. Accordingly, this Court will enter a separate Order and Judgment, granting the Horner's motion for summary judgment against Maryland Midland on the third party complaint.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum, IT IS, this 27th day of July, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That the third party defendants' motion for summary judgment BE, and the same hereby IS, GRANTED;

2. That judgment on the third party complaint BE, and the same hereby IS, entered in favor of third party defendants Delmar R. Horner and Margaret M. Horner, against third party plaintiff Maryland Midland Railway, Inc.; and

3. That the Clerk of Court mail a copy of the foregoing Memorandum and of this Order and Judgment to counsel for the parties.