222 East Chestnut Street Corporation, Appellant, v. William H. Murphy, Appellee.

Gen. No. 43,257.

Heard in the third division of this court for the first district at the October term, 1944. Opinion filed March 21, 1945. Rehearing denied April 10, 1945. Released for publication April 10, 1945.

PHILIP CONLEY, of Chicago, for appellant.

BOYLE, MORRISSEY & WAGNER, of Chicago, for appellee; WILLIAM H. MURPHY, *pro se,* of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On February 12, 1942 the 222 East Chestnut Street Corporation, owner of an apartment building at that address in Chicago, and William H. Murphy, a lawyer, executed and delivered a lease for apartment 7–C on the 7th floor of that building for a term commencing May 1, 1942 and ending April 30, 1943 at a monthly rental of $135. The lease was on a printed form known as Chicago Real Estate Board Form No. 10–C. It contains the following typewritten clause:

"It is agreed that apartment will be redecorated and ready for occupancy by May first, 1942. It is further agreed that the Lessor will close up kitchen opening off front hall and put in door, also Lessor agrees to remove bedroom wall fixture and plaster over same."

Paragraphs 13, 14, 15, 16 and 20 of the lease read:

"13. At the termination of this lease, by lapse of time or otherwise, Lessee shall yield up immediate

possession to Lessor, and deliver all keys to Lessor or his agent at the place where rent is payable and failing so to do, shall pay as liquidated damages for the whole time such possession is withheld a sum equal to twice the amount of the rent herein reserved, pro-rated and averaged per day of such withholding. The acceptance of any such liquidated damages by Lessor shall not constitute a waiver by Lessor of his right of re-entering as hereinafter set forth, nor shall any other act in apparent affirmance of the tenancy operate as a waiver of the right to terminate this lease or operate as an extension thereof, nor shall the provisions of this clause affect Lessor's right, at his election, to treat Lessee as a holdover tenant under the terms hereof.

"14. If Lessee shall permit the premises to remain vacant or unoccupied for a period of ten days, or in the case of the breach of any covenant in this lease contained, Lessee's right to the possession of the demised premises thereupon shall terminate without notice or demand, and the mere retention or possession thereafter by Lessee shall constitute a forcible detainer, and if the Lessor so elects, but not otherwise, this lease shall thereupon terminate, and upon the termination of Lessee's right of possession, as aforesaid, whether this lease be terminated or not, Lessee agrees to surrender possession of the demised premises immediately, and thereby grants to Lessor full and free license to enter into and upon said premises or any part thereof, to take possession thereof with or without process of law, and to expel and remove Lessee or any other person who may be occupying said premises or any part thereof as a member of his family or otherwise, and Lessor may use such force in and about expelling and removing Lessee and said other person as may reasonably be necessary, and Lessor may re-possess himself of the said premises as of his former estate, but said entry of said premise

shall not constitute a trespass or forcible entry or de-tainer, nor shall it cause a forfeiture of rents by virtue thereof, nor a waiver of any covenant, agreement or promise in said lease contained, to be performed by Lessee.

"15. Lessee hereby waives all notice of any election by Lessor hereunder, demand for rent; notice to quit, demand for possession, and any and all notices and demands which may or shall be required by any statute of this State relating to forcible entry and detainer, or to landlord and tenant, or any other statute or law.

"16. The acceptance of rent after it falls due, or after knowledge of any breach hereof by Lessee, or the giving of any notice or making any demand, whether according to any statutory provision or not, or any other act or waiver other than written waiver shall not be construed as a waiver of Lessor's right to act without notice or demand or of any other right hereby given Lessor, or as an election not to proceed under the provisions of this lease.

"20. The rules and regulations contained on the reverse side hereof are hereby made a part of this lease and Lessee shall observe the same. Failure to keep and observe said rules will constitute a breach of the terms of this lease in the same manner as if contained herein as covenants, and a failure to observe the same, shall be of the same effect. Lessee shall keep and observe such further reasonable rules and regulations as may later be required by Lessor or his agent, which may be necessary for the proper and orderly care of the building of which the premises herein demised are a part."

Rule 7 of a set of "Rules and Regulations" printed on the reverse side of the lease, reads: "Animals, birds or reptiles are not allowed on demised premises." Lessee went into possession of the premises. On February 23, 1943 another lease for the apartment, between the same parties, on the same form and for

the same rent, for the term commencing May 1, 1943 and ending April 30, 1944, was signed and delivered. The only difference between the first lease and the second lease, except the term, was in the clause relating to decorating, alterations and repairs, which, in the second lease, reads:

"Lessor agrees to do the following work: Living room—wash walls, remove grease spots, enamel woodwork. Dressing room—Bedroom #1—Paint walls and woodwork, calcimine ceiling. South Bathroom—Clean wallpaper, enamel woodwork, scrape off loose paint & repaint shower ceiling. Bedroom #2—Clean wallpaper, repaint woodwork, calcimine ceiling. Passage to bedrooms—Wash walls, paint woodwork, calcimine ceiling. Kitchen—Enamel woodwork and walls, ceiling. Floors—Buff and rewax floor borders, repair wood floor in dressing room. Screens—Repair defective screens. Window handles—Oil and adjust same. Reglaze—One light in bedroom, south."

The tenant continued to occupy the premises. On February 17, 1944 the landlord tendered to the tenant a third lease on the apartment, between the same parties, and for the same rent, for the term commencing May 1, 1944 and ending April 30, 1945. The only difference between the second lease and the tendered lease, except the term, was in a typewritten clause relating to decorating, which reads:

"It is agreed that annually during the term of this lease, the Lessor will clean and decorate the apartment hereby demised, and spend not to exceed One Hundred Thirty Five and No/100 Dollars ($135.00) per annum for such cleaning and decorating. In the event the cost of such cleaning and decorating exceeds One Hundred Thirty Five and No/100 Dollars ($135.00) per annum, the Lessee hereby agrees to pay such excess."

█ Leo F. Hirschfeld, an architect, was agent for the landlord. There were conferences and an exchange of correspondence on the subject of whether

the tenant would sign the lease. At the expiration of the term of the second lease, April 30, 1944, the tenant remained in possession. He paid the rent monthly. On May 13, 1944 the landlord served on the tenant a written notice that he quit and deliver up possession of the apartment on May 24, 1944, for the stated reason that he had a one-year written lease expiring April 30, 1944, that he refused upon demand to execute a "written extension" or new lease for a further term of like duration, that the landlord submitted to him a renewal lease for the term commencing May 1, 1944 and expiring April 30, 1945, that the "renewal lease·was otherwise on the same terms and conditions as the previous lease," and that he refused to execute the renewal lease. On the same day a copy of the notice was forwarded to the Rent Control Division of the Office of Price Administration at Chicago. He continued to occupy the apartment. On May 25, 1944 the 222 East Chestnut Street Corporation, the landlord, filed in the municipal court of Chicago a praecipe and statement of claim against William H. Murphy, the tenant, alleging that it was entitled to possession of the apartment and that defendant unlawfully withheld possession. Pursuant to an order on a motion by defendant, plaintiff filed a bill of particulars asserting that its claim for possession of the premises was based upon the following: That plaintiff, pursuant to regulation of the Office of Price Administration, tendered to the defendant a renewal lease on the same terms and conditions of the previous lease, for the term commencing May 1, 1944 and expiring April 30, 1945, that defendant refused to execute the renewal lease, that pursuant to the regulation of the Office of Price Administration, plaintiff served him with a 10-day notice, setting out the grounds upon which it relied for removal or eviction, that a copy of the notice was forwarded to the Rent Control Division, Office of Price Administration, Chicago, within 24 hours after service

thereof, and that defendant remained in possession after the expiration of his lease without lawful right. A trial before the court and a jury resulted in a verdict finding defendant not guilty. Motions by plaintiff for a directed verdict, for judgment notwithstanding the verdict and for a new trial were overruled, and judgment was entered on the verdict, from which plaintiff prosecutes this appeal. Defendant was not required to, nor did he, file any statement as to his defense. The record brought to this court does not have the opening statement, the argument to the jury, or the instructions given by the court or urged to be given by the parties. All presumptions are in favor of the judgment and the burden is upon appellant to point out the errors, if any, calling for reversal of the judgment.

Plaintiff asserts that defendant is not entitled to urge certain objections because he is limited to the theory of his case presented in the trial court. The law is well settled that a person cannot try a case on one theory in the trial court and on another theory in a court of review. *Lewy v. Standard Plunger Elevator Co.,* 296 Ill. 295, 304; *R. B. Hayward Co. v. Lundoff-Bicknell Co.,* 365 Ill. 537, 541; *Crawford Realty & Development Corp. v. Woodlawn Trust & Savings Bank,* 382 Ill. 354, 359. It is equally well settled that an appellee has the right to sustain the judgment upon any ground warranted by the record. *Bullman v. Cooper,* 362 Ill. 469, 471, 472: *People v. Bradford,* 372 Ill. 63, 65, 66; *Vieceli v. Cummings,* 322 Ill. App. 559, 563. In *Becker v. Billings,* 304 Ill. 190, the court said (205):

"An appellant or plaintiff in error who brings a case to an appellate court for review must indicate by his assignment of errors the errors of which he complains and his argument must be confined to the errors so assigned. An appellee or defendant in error is subject to no such requirement. He is entitled to sus-

tain the decree of the trial and appellate courts by any argument and upon any basis appearing in the record which shows that the decree is right, even if he had not previously advanced such argument.''

*Hazel v. Hoopeston-Danville Motor Bus Co.*, 310 Ill. 38, 51. Under the authorities the defendant has a right to sustain the judgment upon any ground warranted by the record. We have a right to assume that the arguments and the instructions related to the evidence and were pertinent to the points being urged by the respective parties, and that the jury followed the instructions and applied them to the evidence in considering and returning the verdict. The fact that the jury returned a verdict in favor of defendant indicates that they adopted the theory of the case argued to them by defendant. No errors are urged as to the instructions, except the court's refusal to give a peremptory instruction for plaintiff. We assume that the jury followed the instructions that were given. Presumably, the instructions incorporated the respective theories of the parties, or error would be assigned thereon.

Arguing in support of the judgment, defendant states that the renewal lease was presented by the landlord at an ''unreasonably early stage'' for it to demand that the tenant sign. It will be observed that the first lease was signed February 12, 1942 and the second lease February 23, 1943. The tendered lease is dated February 17, 1944, and was received by defendant the following day. It is obvious, from the course of dealings of the parties, that the tendering of the lease on February 18, 1944 was not at an unreasonably early stage. The evidence establishes that plaintiff was ready and willing to execute the tendered lease during March and April. Defendant's contention that the lease was tendered at an unreasonably early period is without merit.

■ ■ We agree with plaintiff's contention that unless the Federal Rent Control Act and the Office of Price Administration regulation necessitate a different result, it would be entitled to a directed verdict, and that defendant's claim to possession is based entirely on the Federal Rent Control Act and the regulation promulgated thereunder. Pursuant to par. (b) of sec. 902, title 50, supp. 3, U. S. Code, 1941–1943, the administrator declared the Maximum Rent Regulation applicable to the Chicago defense rental area, which includes Cook county. Congress validly delegated to the administrator the power to issue rent regulations legislative in character within the framework of the legislative standards laid down. The court takes judicial notice of rent regulations for housing issued under the Act, which are reported in the federal register. Defendant maintains that the renewal lease tendered to him for signature increased his contractual obligations with plaintiff and bound him to pay for all decorating of his apartment that exceeded $135, notwithstanding plaintiff's estimate indicated the cost to be less, and thereby violated the rent regulation. Section 6 (a) of the Maximum Rent Regulation for Housing Accommodations other than hotels or rooming houses, reads:

"So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, unless: (1) The tenant, who had a written lease or other written rental agreement, has refused upon demand of the landlord to execute a written extension or renewal thereof for a further term of like

duration but not in excess of one year but otherwise on the same terms and conditions as the previous lease or agreement, except insofar as such terms and conditions are inconsistent with this Maximum Rent Regulation; . . . ."

The first lease did not specify the decorating to be done. It contemplated that the decorating would be done before the tenant moved in. The second lease mentions specific cleaning and decorating, also the repair of a floor in the dressing room, the repair of defective screens, oiling and adjusting window handles and the reglazing of a light of window glass in a bedroom window. The evidence shows that the cleaning and decorating were done by William S. Alt & Son in May 1943, and that plaintiff paid $126 therefor. The evidence also shows that in February 1944, at the time the execution of a third lease was under consideration, an employee of the agent accompanied a decorator named Frank Mejstrik to the apartment; that they went through the apartment with defendant and his wife; that the decorator made up an estimate sheet; and that the estimate sheet showed that the decorating requested by defendant would cost $116. Defendant states that a comparison of the second lease and the tendered lease shows that the tendered lease is not on the same terms and conditions as the previous lease. We cannot agree with this contention. The decorating provided for in the previous lease cost $126 and the decorating contemplated to be done under the tendered lease would cost $116. The tendered lease obligates the landlord to pay for cleaning and decorating up to one month's rent, or $135, and requires the tenant to pay for the cleaning and decorating should the cost exceed $135. We construe this clause as not giving the landlord the right to force the tenant to clean and decorate at a cost of more than $135, the tenant paying for the excess. The clause contemplates that the tenant shall have a voice in determining the extent of

the decorating and that he could be required to pay
for the excess only should he insist on ordering clean-
ing and decorating costing in excess of $135. We
agree with plaintiff that the tendered lease, including
the clause relating to cleaning and decorating, was
substantially the same as the previous lease, and that
in that respect there was no violation of the regula-
tion.

■ Defendant suggests that plaintiff's action is
motivated by a desire to "evict all dog-owning ten-
ants," that in plaintiff's brief and bill of particulars,
mention of the dog is avoided, and that this constitutes
an attempted evasion of the Federal Rent Regulation.
From a reading of the transcript of the testimony and
the exhibits, it appears that during the two or three
months prior to the expiration date of the second lease
there was a "controversy regarding the dog." Par.
20 of the lease makes the rules and regulations on the
reverse side a part of the lease. This paragraph
states that failure to keep and observe such rules shall
constitute a breach of the terms of the lease in the
same manner as if contained therein as covenants.
Rule 7 of the rules and regulations provides that
animals, birds or reptiles are not allowed on the de-
mised premises. Sec. 6 (a) (3) of the regulations pro-
vides that so long as the tenant continues to pay the
rent to which the landlord is entitled, no tenant shall
be evicted unless he has violated a substantial obliga-
tion of his tenancy, other than an obligation to pay
rent, and has continued or failed to cure such viola-
tion after written notice by the landlord that the
violation cease. The first and second leases contained
par. 20 and rule 7 relating to animals, reptiles and
birds and the tendered lease contained the same para-
graph and rule. In that respect the tendered lease was
the same as the expiring lease. Plaintiff was required
to specify in its bill of particulars the grounds on
which it sought judgment and it did not specify that

the tenant had violated rule 7, nor in its written notice did plaintiff request that any alleged violation of rule 7 cease. We are not called upon to say whether the keeping of a dog on the premises would be violating a substantial obligation of the tenant.

The lease tendered by plaintiff was "for a further term of like duration but not in excess of one year." It was also on substantially the same terms and conditions as the previous lease or agreement. The question arises as to whether the terms and conditions of the tendered lease are inconsistent with the Maximum Rent Regulation. Defendant maintains that pars. 13, 14, 15 and 16 are contrary to the Maximum Rent Regulation. Par. 13 requires yielding up of possession and paying as liquidated damages for the withholding period a sum equal to twice the amount of the rent reserved. Par. 15 contains a waiver on the part of the lessee of any notice to quit, demand for possession, and any and all demands which may or shall be required by any statute of Illinois relating to forcible entry and detainer, or to landlord and tenant, or any other statute or law. Pars. 14 and 16 relate to lessee vacating the premises without notice at landlord's demand and in spite of payment of rent. Plaintiff points out that these paragraphs were in the expiring lease, and states that if the rent control terminated before the expiration of the lease, then the common-law rights of the parties would be resumed and the provisions of the lease would become effective. Plaintiff also states that with rent control in force, so far as the paragraphs conflicted with the rent control, they were invalid and need not be obeyed. Plaintiff also urges that defendant made no such point at the trial. It is clear and apparently undisputed that some if not all of the covenants in pars. 13, 14, 15 and 16 are contrary to the regulation governing rent control. Sec. 1 (d) of the regulation reads:

"An agreement by the tenant to waive the benefit of any provision of this Maximum Rent Regulation is void."

It might be argued that as the objectionable paragraphs in the tendered lease are void, that the tenant is not harmed. This argument, if valid, could also be presented as to a tendered lease which raised the rent beyond the maximum. For instance, if plaintiff had tendered a lease with the monthly rental raised from $135 to $150, would plaintiff be permitted to successfully argue that the defendant was not harmed because the increase would be void even though the lease were accepted by the tenant? If the landlord desires to take advantage of the provisions of sec. 6 (a) (1), he must demand that the tenant execute a written extension or renewal for a further term of like duration, but not in excess of one year and otherwise on the same terms and conditions as the previous lease or agreement "except insofar as such terms and conditions are inconsistent with this Maximum Rent Regulation." The burden was on plaintiff to demand that the tenant execute such an extension or renewal. The fact that the objectionable paragraphs were in the preceding lease does not make such paragraphs unobjectionable. If the tendered renewal lease contains material terms and conditions inconsistent with the regulation, then the failure or refusal of the tenant to execute such lease would not give the landlord the right to evict him. The tendered lease in the instant case contains terms and conditions inconsistent with the Maximum Rent Regulation and it cannot be said that the defendant refused upon demand to execute an extension or renewal for not less than a year of a lease that did not contain terms and conditions inconsistent with the Maximum Rent Regulation. It would be unreasonable to expect a tenant to execute a lease which is contrary to the Maximum Rent Regulation.

Sec. 6 (d) (1) reads:

"Every notice to a tenant to vacate or surrender possession of housing accommodations shall state the ground under this section upon which the landlord relies for removal or eviction of the tenant. A written copy of such notice shall be given to the area rent office within 24 hours after the notice is given to the tenant."

The landlord complied with this paragraph of the regulation by giving written notice to the tenant on May 13, 1944 and by giving a written copy of such notice to the area rent office within 24 hours after notice was given to the tenant. Sec. 6 (d) (2) reads:

"At the time of commencing any action to remove or evict a tenant, including an action based upon non-payment of rent, the landlord shall give written notice thereof to the area rent office stating the title of the case, the number of the case where that is possible, the court in which it is filed, the name and address of the tenant, and the ground under his section on which removal or eviction is sought."

These paragraphs require a notice before the action is commenced and a further notice at the time the action is commenced. At the time the action is commenced the landlord is required to give written notice to the area rent office, stating the title of the case, the number of the case where that is possible, the court in which it is filed, the name and address of the tenant and the ground "under this section on which removal or eviction is sought." The record is silent as to whether the second notice contemplated was given at the time of commencing the action. Plaintiff points out that on the trial the notice served on May 13, 1944, prior to the commencement of the suit, was admitted without objection. Plaintiff does not discuss any other notice. The record is silent as to whether any written notice was given the rent area office of the

commencement of the suit, the number of the case and the other data required. Sec. 904, title 50, supp. 3, U. S. Code, provides that "it shall be unlawful, regardless of any . . . lease . . . to do or omit to do any act, in violation of any regulation or order under Section 2 . . . , or to offer, solicit, attempt, or agree to do any of the foregoing." The regulation contemplates that during the present emergency the landlord shall give notice to the rent area office at the time of commencing action in forcible detainer so as to enable that office to effectually aid in the enforcement of the act. The regulation is binding on the tenant as well as the landlord. The tenant is not permitted to waive the giving of the notice. The requirement that the notice be given is undoubtedly one of the most important provisions of the regulation.

 This is a case wherein a verdict should have been directed. There was no question of fact for the jury to pass on. The construction of the leases was for the court. Plaintiff moved for a directed verdict. Defendant did not move for a directed verdict. Plaintiff, arguing that a party on appeal is limited to the theory of his case presented in the trial court, quotes the following from *Notroma Corp. v. Miller,* 292 Ill. App. 612, 619:

"In any event this defense was neither alleged in defendant's answer to plaintiff's complaint nor offered or even suggested upon the trial, and not having been presented in the trial court, cannot be urged or relied upon for the first time in a court of review."

It will be observed that in that case the defendant did not allege his defense in his answer. In the instant case no answer was filed or required. In *City of Mattoon v. Noyes,* 218 Ill. 594, also cited by plaintiff, the city sued out a writ of error. It was the defendant below. The error was urged by the city and the burden was upon it to point out where it had raised the

point below. There is sufficient in the record in the case at bar to support the judgment. Defendant may sustain the judgment upon any ground warranted by the record. Had defendant moved for a directed verdict, it would have been the duty of the trial judge to allow such motion. Nevertheless, the verdict returned by the jury and the judgment entered were the verdict and judgment he sought, and he has no cause to complain.

For the reasons stated, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

KILEY and LUPE, JJ., concur.