[Cite as *State v. Crawford*, 2023-Ohio-3791.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :               No. 112191

v.                                      :

ISAIAH CRAWFORD,                        :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 19, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-633853-A and CR-19-640088-A

---

### *Appearances:*

Michael P. Maloney, *for appellant.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant Isaiah Crawford, pro se, appeals his convictions after he pled guilty to multiple offenses in two cases, CR-18-633853-A ("633853") and CR-19-640088-A ("640088"). Crawford's appellate counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that, following an examination of the record, he has

found "no assignments of any merit to raise [in] this appeal." This court held the motion in abeyance to give Crawford an opportunity to file a pro se brief. He did not do so. After conducting our own independent review, we grant counsel's motion to withdraw and dismiss the appeal.

{¶ 2} However, in 633853, we remand the matter to the trial court for the issuance of nunc pro tunc entries to correct clerical errors in its February 17, 2022 and February 28, 2022 journal entries with respect to Crawford's guilty plea on amended Count 1.

**Factual and Procedural Background**

{¶ 3} On October 31, 2018, Crawford was indicted on 13 counts in 633853: one count of aggravated burglary in violation of R.C. 2911.11(A)(1), one count of aggravated burglary in violation of R.C. 2911.11(A)(2), two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of aggravated robbery in violation of R.C. 2911.01(A)(3), two counts of felonious assault in violation of R.C. 2903.11(A)(1), two counts of felonious assault in violation of R.C. 2903.11(A)(2), one count of unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A), one count of possessing a defaced firearm in violation of R.C. 2923.201(A)(2), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3).

{¶ 4} The aggravated burglary, aggravated robbery and felonious assault counts included one- and three-year firearm specifications, forfeiture of weapons specifications, and forfeiture of property specifications. The having weapons while

under disability count included one- and three-year firearm specifications and forfeiture of weapons specifications, and the unlawful possession of a dangerous ordnance and possessing a defaced firearm counts included forfeiture of weapons specifications.

{¶ 5} The charges related to an incident that occurred on October 18, 2018, in which Crawford allegedly broke into the victims' apartment, pistol-whipped two men multiple times, and shot one of the men in the hand before he left the third-floor apartment and "scaled down" balconies in an attempt to escape. When he reached the ground and was apprehended by police, Crawford allegedly had one of the victim's wallets in his pocket. Police body-camera footage allegedly captured Crawford scaling down the balconies, his apprehension by police, and the search incident to his arrest in which one of the victims' wallets was found in Crawford's pocket. Police later searched Crawford's apartment and recovered a gun allegedly containing blood and DNA consistent with one of the victims and DNA consistent with Crawford. Crawford pled not guilty to all counts.

{¶ 6} On May 31, 2019, Crawford was indicted on three counts in 640088: one count of carrying a carrying a concealed weapon in violation of R.C. 2923.12(A)(2), one count of improperly handing firearms in a motor vehicle in violation of R.C. 2923.16(B), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3). The charges related to an incident that allegedly occurred on January 26, 2018. All counts included forfeiture of weapon specifications. Crawford pled not guilty to all counts.

**Pretrial Proceedings and Plea Negotiations**

{¶ 7} After numerous continuances, a jury trial was scheduled for October 25, 2021. At the pretrial conference on October 21, 2021, the assistant prosecutor placed the state's plea offer on the record. The assistant prosecutor indicated that the state would agree to dismiss the remaining charges if (1) in 633853, Crawford pled guilty to one count of aggravated burglary with a three-year firearm specification, one count of felonious assault with a one-year firearm specification, one count of felonious assault (deleting the firearm specifications), one count of unlawful possession of a dangerous ordnance, and one count of possessing a defaced firearm and (2) in 640088, Crawford pled guilty to one count of carrying a concealed weapon. (Tr. 3-4.)

{¶ 8} The state indicated that, under its plea offer, Crawford would be subject to a minimum aggregate prison sentence of seven years, but that the state would not agree to a seven-year minimum sentence. (Tr. 4, 7, 122-123.) In response to the state's plea offer, defense counsel stated that he had "just talked" to Crawford and that Crawford "might take three years but definitely not seven." (Tr. 7.) The October 25, 2021 trial date was later continued due to the unavailability of the assistant prosecutor. Trial was rescheduled for February 2022.

{¶ 9} At the final pretrial conference on January 28, 2022, the state, once again, placed its plea offer on the record (the same plea deal it had offered previously) and indicated,

it's the State's position that based on law, a minimum sentence * * * for his cases would be seven years. That would be * * * four years for the gun specs, * * * for Counts 1 and 5 in 633853, and then the underlying minimum sentence for the aggravated burglary is three years bringing it to seven years.

It's the State's position also if Mr. Crawford proceeds to trial and is found guilty, * * * in all counts, a minimum sentence would be nine years.

(Tr. 28-31.)

{¶ 10} The assistant prosecutor indicated that, in response to the state's plea offer, defense counsel had "asked for an agreed four-year sentence," but that the state had rejected Crawford's counteroffer. (Tr. 31-32, 122.) Defense counsel confirmed his understanding of the state's plea offer, stated that he had reviewed the state's plea offer with Crawford and that Crawford had declined the state's plea offer. (Tr. 31-32.)

{¶ 11} The assistant prosecutor then stated that he "want[ed] to put everyone on notice on what the State intends to present at trial" and proceeded to describe the state's evidence, including the testimony of the two victims, the body-camera footage capturing Crawford scaling down the balconies of the apartment building and his arrest with one of the victim's wallets in his pocket, and the blood and DNA evidence found on the gun recovered from Crawford's apartment. (Tr. 32-33.) The assistant prosecutor indicated that this evidence had been shared with defense counsel. (Tr. 33.)

{¶ 12} Defense counsel acknowledged that he was aware of the state's version of events but stated that Crawford's version of events was "completely

contrary to what the alleged victims claim." (Tr. 34.) Upon inquiry by the trial court, both Crawford and defense counsel indicated that they were prepared to proceed to trial, which was then scheduled for February 7, 2022. (Tr. 34, 58-59.)

{¶ 13} On February 7, 2022, Crawford waived his right to a jury trial. The trial court inquired whether there had been any changes to the state's final plea offer. The assistant prosecutor responded that the state's plea offer was the "same plea [offer] that was put on the record previously." (Tr. 72-73.) To "make sure that there [were] no issues with [defense counsel] having reviewed all * * * the discovery with [Crawford]," the trial court ordered that the discovery be reviewed with Crawford in the courtroom that day and the following day. (Tr. 81-82, 84-90, 127-128.)

{¶ 14} An evidentiary hearing on a motion to suppress evidence Crawford had filed in October 2019[1] was held on February 9, 2022. The state presented testimony from three responding police officers and introduced excerpts of footage from their body cameras from the date of the incident.

{¶ 15} At the outset of the February 9, 2022 suppression hearing, the assistant prosecutor indicated that it was the state's position that "no further plea reductions will be offered after the motion to suppress." (Tr. 120.) The trial court directed the assistant prosecutor to, once again, set forth the state's final plea offer on the record, and the assistant prosecutor did so. (Tr. 120-123.) Defense counsel

---

[1] On October 12, 2019, Crawford filed a "motion to suppress the fruits of the warrantless search of his residence." He claimed that Cleveland police had conducted an improper, warrantless search of Crawford's apartment after they had detained Crawford on the morning of October 18, 2018, and that the trial court should, therefore, "suppress all of the fruits of this warrantless search."

indicated that he had reviewed the state's plea offer with Crawford and that Crawford had declined the offer. (Tr. 123.) The record reflects that during breaks in the proceedings, defense counsel discussed the state's plea offer with Crawford and that the assistant prosecutors, with the consent of defense counsel, also spoke with Crawford and his family regarding the state's plea offer, "explain[ing] the potential sentences as far as * * * what the pleas would be and his maximum exposure if he didn't take a plea" and, instead, proceeded to trial and was found guilty on all counts. (Tr. 124-136.) Defense counsel confirmed that Crawford discussed the state's plea offer with his family and what was explained to Crawford and his family. (Tr. 135-136.)

{¶ 16} On February 10, 2022, the trial court denied Crawford's motion to suppress, and the case proceeded to a bench trial.

**The Plea Agreement**

{¶ 17} After the parties gave their opening statements, describing their versions of the events and what they claimed the evidence would show, the state called its first witness. Crawford then interrupted the proceedings and asked the trial court if he and his attorney could speak with the assistant prosecutor. (Tr. 226.) The trial court agreed. (Tr. 226-227.) Following their discussion, the state agreed to put its prior plea offer "back on the record" and Crawford agreed to accept that plea offer. (Tr. 227-228, 233-234.) Under the terms of the plea agreement, (1) in 633853, Crawford would plead guilty to one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a first-degree felony, with a three-year firearm

specification and the forfeiture of five weapons (amended Count 1), one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony, with a one-year firearm specification and the forfeiture of the same five weapons (amended Count 5), another count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony, without firearm specifications but the forfeiture of the same five weapons (amended Count 9), unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A), a fifth-degree felony, with forfeiture of a weapon (Count 11 as charged) and possessing a defaced firearm in violation of R.C. 2923.201(A)(2), a first-degree misdemeanor, with forfeiture of a weapon (Count 12 as charged). In 640088, Crawford would plead guilty to one count of carrying a concealed weapon in violation of 2923.12(A)(2) with the forfeiture of a weapon (Count 1 as charged). (Tr. 228-234.)

{¶ 18} The parties further agreed that (1) the offenses in 633853 were not allied offenses of similar import and that trial court could impose consecutive sentences, at its discretion, as to those offenses, (2) Crawford would have no contact with the victims and (3) Crawford would pay restitution in an amount to be determined prior to sentencing. (Tr. 233-234.) In exchange for Crawford's guilty pleas, the remaining counts would be nolled.

{¶ 19} After the terms of the plea agreement were stated on the record, the trial court proceeded with the plea colloquy. The trial judge told Crawford that she needed to make sure that any plea Crawford entered was "intelligently, voluntarily, and knowingly given" and that if Crawford did not understand something, he needed

to tell her that he did not understand. Crawford indicated that he understood. (Tr. 234.) In response to the trial judge's preliminary questions, Crawford indicated that he was a United States citizen, was 41 years old, and had attended school through the 11th grade, that he could read and write and that he was not under the influence of any drugs, alcohol, medication or other substance that affected his ability to understand the proceedings. (Tr. 234-235.) The trial judge confirmed with Crawford that he understood what was happening and, when asked to describe what was occurring in his own words, stated, "Plea deal have [sic] been entered." (Tr. 235.)

{¶ 20} The trial judge confirmed with Crawford that no one had threatened him or had promised him anything (other than what had been stated on the record at the change-of-plea hearing) to induce him to change his pleas and that he was satisfied with the representation he had received from defense counsel. (Tr. 235-236.) The trial judge also confirmed that Crawford understood that, by entering guilty pleas, he would be "admitting to the truth of the facts and [his] full guilt in this matter." (Tr. 237.)

{¶ 21} The trial judge then advised Crawford of his constitutional rights, confirmed that he understood the rights he would be waiving by entering his guilty pleas, and confirmed that he understood that the trial court could proceed with judgment and sentence him immediately after his guilty pleas. (Tr. 237-238.) The trial judge identified each of the offenses to which Crawford would be pleading guilty and the potential penalties associated with each and confirmed that Crawford

understood them. (Tr. 239-245.) The trial judge also specifically advised Crawford that the sentences on the three- and one-year firearm specifications would be served prior to and consecutive to the sentences on the underlying offenses, i.e., "for a total of four years that will be served before you serve any sentence on the underlying count[s]," that this was "a mandatory sentence," and that the parties had agreed that the offenses to which Crawford would be pleading guilty were not allied offenses of similar import, "which means the [c]ourt could run sentences consecutively." (Tr. 239, 241-242, 245.) The trial judge also explained postrelease control and the potential consequences of violating postrelease control. (Tr. 246-247.) Crawford indicated that he understood the trial court's advisements, that he had no questions about his potential sentences, and that, following the trial court's advisements, he still wished "to move forward with [the] plea agreement." (Tr. 239-247.) Defense counsel and the assistant prosecutor both indicated that they were satisfied that the trial court had complied with Crim.R. 11. (Tr. 247-248.)

{¶ 22} Crawford entered his guilty pleas consistent with the plea agreement. The trial court found that Crawford had entered his guilty pleas knowingly, intelligently, and voluntarily with an understanding of his constitutional rights, the nature of the charges, and the maximum penalties. (Tr. 248-251.) The trial court accepted Crawford's guilty pleas, nolled the remaining counts, and set a date for the sentencing hearing. (Tr. 251.)

**Sentencing**

{¶ 23} On February 17, 2022, the trial court conducted a sentencing hearing at which it heard from the state, Crawford's mother, defense counsel, and Crawford.

{¶ 24} When addressing the trial court, Crawford indicated that he had questions regarding his "time earned credit" and "the gun specs situation," i.e., whether he was "supposed to be charged with both of them or just one of them, or what's the process with that?" (Tr. 263-264.) With respect to Crawford's inquiries regarding his credit for "time served," the trial court indicated that it had confirmed with the assistant prosecutor and defense counsel that Crawford was entitled to 571 days of jail-time credit for the time he had been in jail awaiting trial. (Tr. 265-266.) With respect to Crawford's questions regarding the firearm specifications, the trial judge stated, that, as she had previously explained at the change-of-plea hearing,

> when you pled to Count 1 as well as Count 5, I believe Count 5 was the one-year firearm spec and 1 is the three-year firearm spec, that those can be run consecutively and would be run consecutively. So that would be four years for the firearm spec, and those would be served consecutive and prior to any other sentence. That is what I explained to you last week.

(Tr. 264.)

{¶ 25} When asked whether he had any further questions regarding the firearm specifications, Crawford claimed that, despite his statements to the contrary at the change-of-plea hearing, he did not, in fact, understand how sentencing would work with the firearm specifications:

> [L]ast week when we was going over it[,] it was so much I didn't comprehend, you know, exactly what was going on so I didn't have a

chance to address it and process what was being said. And I would have brung that up for questioning if I had a chance to understand what was going on with that.

(Tr. 264-265.)

{¶ 26} The trial court rejected Crawford's claim that his guilty pleas were not knowingly and intelligently entered because he did not understand the mandatory sentences on the firearm specifications:

THE COURT: Mr. Crawford, I asked so many times throughout that plea if you understood and had any questions, so the Court did make a finding that your plea was knowingly, intelligently, and voluntarily entered into. So I'm not going to change that finding because we spent quite a bit of time going over that.

It is my responsibility to ensure that any plea you enter into that you know what you're doing. And I take that very seriously. I find you did understand that.

(Tr. 265.)

{¶ 27} Crawford did not raise any other issues with respect to the knowing, intelligent, or voluntary nature of his guilty pleas at or prior to the sentencing hearing.

{¶ 28} After hearing from the state, Crawford's mother, defense counsel, and Crawford and considering (1) the principles and purposes of felony pursuant to R.C. 2929.11, (2) the seriousness and recidivism factors pursuant to R.C. 2929.12, (3) R.C. 2929.13 and "any other sections related to felony sentencing," and (4) "the entire record" in the case, the trial court sentenced Crawford to an aggregate eight-year prison sentence. (Tr. 269-271, 274.) In 633853, the trial court sentenced Crawford to eight years on amended Count 1 (3 years on the firearm specification to

be served prior to and consecutive to four years on the underlying offense), to four years on amended Count 5 (one-year on the firearm specification to be served prior to and consecutive to three years on the underlying offense), three years on amended Count 9, 12 months on Count 11 and 180 days (time served) on Count 12. In 640088, the trial court sentenced Crawford to 12 months on Count 1. The trial court ordered that sentences on the one- and three-year firearm specifications be served prior to and consecutive to the sentences on the underlying offenses and that all sentences on the underlying offenses be served concurrently. The trial court also imposed postrelease control and ordered the forfeiture of the weapons identified in the forfeiture-of-weapons specifications. (Tr. 269-274.) The trial court declined to order restitution because the state had offered no evidence regarding the amount of the damages allegedly sustained by the victims. (Tr. 267-268.) On February 28, 2022, the trial court filed its sentencing journal entries, setting forth the sentences imposed.

### Motion to Withdraw Guilty Pleas

{¶ 29} Seven days after his sentencing, on February 24, 2022, Crawford, pro se, filed a motion to withdraw his guilty pleas. Crawford indicated that he wanted to withdraw his guilty pleas because defense counsel "promise[d]" him a seven-year prison sentence and he received an eight-year prison sentence. He also claimed that he was denied the effective assistance of counsel because defense counsel (1) did not show him discovery, including the police report, "video camera footage" and "audio footage," produced by the state, (2) never subpoenaed any witnesses or obtained

fingerprint or DNA samples, (3) could not answer questions Crawford asked him related to his defense, (4) filed continuances on Crawford's behalf without notifying Crawford and "without understanding what he was doing," (5) told the trial court he was prepared for trial when he was not, and (6) "lead [sic] [Crawford] into making a[n] uneducated decision regarding [his] plea." Crawford did not submit an affidavit or other evidence in support of his motion. On March 3, 2022, the trial court summarily denied Crawford's motion to withdraw his guilty pleas.

**Appeal**

{¶ 30} In December 2022, Crawford, pro se, filed a motion for leave to file a delayed appeal 633853 and 640088, along with a motion for appointment of appellate counsel. In his notice of appeal, Crawford stated that he sought to appeal from "the judgment entry of conviction, entered * * * on the 17th day of February 2022."[2] This court granted the motion and appointed Crawford appellate counsel.

{¶ 31} On April 20, 2023, Crawford's appellate counsel filed a motion for leave to withdraw pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, and a brief in support ("*Anders* brief"), asserting that, following an examination of the record, he had found "no assignments of any merit to raise on this appeal." This court ordered appellate counsel to provide a copy of his appellate brief to Crawford and gave Crawford leave to file a pro se appellant's brief by June 23, 2023.

---

[2] The judgment entries indicate that they were "sent" on February 17, 2022. They were signed by the trial judge and filed on February 28, 2022.

{¶ 32} On June 22, 2023, Crawford filed a motion for extension of time to file his pro se appellant's brief. This court granted the motion and ordered Crawford to file his pro se appellant's brief by July 17, 2023. Crawford did not file a pro se appellant's brief or request a further extension of the deadline to do so.

**Law and Analysis**

*Anders* **Review**

{¶ 33} In *Anders*, the United States Supreme Court outlined a procedure that appointed counsel must follow to withdraw due to the lack of any meritorious grounds for appeal. *Anders* at 744. If appointed counsel, after a conscientious examination of the record, determines an appeal to be wholly frivolous, he or she should advise the court of that fact and request permission to withdraw. *Id.* Counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* A copy of the brief must be provided to the client, who must then be allowed sufficient time to file his or her own pro se appellate brief. *Id.*

{¶ 34} If these requirements are met, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. *Id.* If the appellate court, after its independent review, finds "any of the legal points arguable on their merits (and therefore not frivolous)," i.e., that an arguably meritorious issue exists for appeal, it must discharge current counsel and appoint new counsel to prosecute the appeal. *Id.* If, however, the appellate court determines that the appeal is wholly frivolous, it may grant counsel's request to withdraw and

dismiss the appeal. *Id.*; *see also State v. Garrison*, 8th Dist. Cuyahoga No. 111728, 2023-Ohio-1039, ¶ 7-8; *State v. Phillips*, 8th Dist. Cuyahoga No. 110526, 2022-Ohio-375, ¶ 7-8.

{¶ 35} We recognize, as this court stated in *Garrison*:

> Some judges of this court have criticized the *Anders* approach and suggested this court should eliminate the *Anders* procedure. *See, e.g., State v. Ruffin*, 8th Dist. Cuyahoga Nos. 109134 and 109135, 2020-Ohio-5085 (S. Gallagher, J., dissenting); *State v. Sims*, 2019-Ohio-4975, 149 N.E.3d 1143 (8th Dist.) (Boyle, J., dissenting). Other districts have declined to accept Anders briefs, noting that the procedure is a constitutional safeguard but not a constitutional requirement. *See, e.g., State v. Wilson*, 2017-Ohio-5772, 83 N.E.3d 942 (4th Dist.); *State v. Wenner*, 2018-Ohio-2590, 114 N.E.3d 800 (6th Dist.); *State v. Cruz-Ramos*, 2018-Ohio-1583, 125 N.E.3d 193 (7th Dist.). Nevertheless, "this court continues to follow the procedures announced in *Anders*." *State v. Phillips*, 8th Dist. Cuyahoga No. 110526, 2022-Ohio-375, ¶ 9, citing *State v. Taylor*, 8th Dist. Cuyahoga No. 101368, 2015-Ohio-420; *State v. Williams*, 8th Dist. Cuyahoga No. 107847, 2019-Ohio-3766; *In re J.L.*, 8th Dist. Cuyahoga No. 109626, 2020-Ohio-5254.

*Garrison* at ¶ 9; *see also Phillips* at ¶ 9.[3]

---

[3] We also note that, previously, former Loc.App.R. 16(C) set forth the specific procedure governing *Anders* briefs and motions to withdraw followed by this court. That rule was amended on February 1, 2019, and no longer includes any procedure for the filing of *Anders* briefs. However, as this court has previously stated, "the absence of a local rule governing *Anders* briefs does not prevent this court from accepting these briefs nor from following the procedure the United States Supreme Court outlined in *Anders*." *Sims* at ¶ 7-14 (discussing "the duties of appellate counsel when filing an Anders brief and our duties when ruling on counsel's motion to withdraw on the grounds that the appeal would be frivolous" even in the absence of former Loc.App.R. 16(C), different Ohio appellate courts' views on *Anders* briefs and this court's decision that "until the Ohio Supreme Court resolves the split among the Ohio Appellate Districts regarding the application of Anders * * * we will continue to adhere to the procedures outlined in *Anders* pertaining to both counsel and the court when appointed appellate counsel files a motion to withdraw because an appeal would be wholly frivolous"); *see also In re J.P.S.*, 8th Dist. Cuyahoga No. 112101, 2023-Ohio-3151, ¶ 27.

**{¶ 36}** Therefore, we must consider whether counsel's request to withdraw should be granted because any appeal would be frivolous. Although Crawford's appointed counsel asserts that no meritorious arguments can be made on Crawford's behalf, he presents as a potential error "whether [Crawford's] guilty pleas were voluntarily, knowingly and intelligently made."

**{¶ 37}** In his *Anders* brief, appellate counsel asserts that "[o]n both analysis of the trial court's denial of [Crawford's] motion to withdraw his [g]uilty pleas below, and on review of the legal standards used in assessing the validity of [Crawford's] changes of pleas, there appears to be no error of merit to address on this appeal."

**{¶ 38}** As an initial matter, we note that although appointed counsel's *Anders* brief recites the basis upon which a trial court may grant a postsentence motion to withdraw a guilty plea and our standard of review on appeal of a denial of a postsentence motion to withdraw a guilty plea, appointed counsel (1) does not mention any of the grounds raised by Crawford in his motion to withdraw his guilty pleas, (2) does not address whether any of Crawford's assertions in his motion to withdraw his guilty pleas are supported by the record, and (3) does not address whether those assertions would be sufficient to warrant withdrawal of his guilty pleas or, at least, a hearing on the issue. (*Anders* Br. at 3.) We need not address that issue further, however, because Crawford's notice of appeal indicates that he has appealed from only the trial court's February 17, 2022 "judgment entr[ies] of conviction" in 633853 and 640088, not its subsequent order in 633853 on March 3,

2022, denying his motion to withdraw his guilty pleas. The scope of our review is limited to the final orders or judgments identified in the notice of appeal. *See* App.R. 3(D) (notice of appeal "shall designate the judgment, order or part thereof appealed from"); App.R. 12(A)(1)(a) ("On an undismissed appeal from a trial court, a court of appeals shall * * * [r]eview and affirm, modify, or reverse the judgment or final order appealed."); *State v. Henderson*, 8th Dist. Cuyahoga No. 100385, 2014-Ohio-2061, ¶ 8 ("A court of appeals lacks jurisdiction to review a judgment or order that is not designated in the notice of appeal."); *see also State v. Leek*, 8th Dist. Cuyahoga No. 74338, 1999 Ohio App. LEXIS 3503, 3-4 (July 29, 1999) (court lacked jurisdiction to review order denying appellant's motion to withdraw his guilty plea where appellant's notice of appeal failed to challenge journal entry in which trial court denied appellant's motion to withdraw his guilty plea); *State v. Hudson*, 2d Dist. Montgomery Nos. 27022, 27027, and 27028, 2017-Ohio-2608, ¶ 14-15 (appellate court lacked jurisdiction to review trial court decision denying defendant's motion to withdraw guilty plea where notice of appeal stated defendant was appealing from sentencing entries and did not designate the trial court's decision denying motion to withdraw guilty plea as the judgment being appealed from).

{¶ 39} Crawford's notice of appeal has not been amended nor has an additional notice of appeal (or motion to filed a delayed appeal) been filed to include the trial court's order denying Crawford's motion to withdraw his guilty pleas. Because the scope of our review is limited to the judgments identified in the notice of appeal, we do not address appellate counsel's analysis (or lack thereof) of any

potential error relating to the trial court's denial of Crawford's motion to withdraw his guilty pleas. We have, however, fully examined the record to determine "whether [Crawford's] guilty pleas were voluntarily, knowingly and intelligently made" as it relates to "the validity of [Crawford's] changes of pleas" and the trial court's acceptance of his guilty pleas at the change-of-plea hearing.

### Knowing, Intelligent, and Voluntary Guilty Pleas

{¶ 40} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *see also State v. Engle*, 74 Ohio St.3d 525, 527, 60 N.E.2d 450 (1996) ("When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.").

{¶ 41} Crim.R. 11(C)(2) "prescribes the process" a trial court must follow before accepting a guilty plea to a felony. *Bishop* at ¶ 11, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331

N.E.2d 411 (1975). The purpose of Crim.R. 11(C) is "'to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty.'" *State v. Woodall*, 8th Dist. Cuyahoga No. 102823, 2016-Ohio-294, ¶ 12, quoting *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 42} Under Crim.R. 11(C)(2), a trial court shall not accept a guilty plea in a felony case without first personally addressing the defendant and doing all the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 43} We conduct a de novo review to determine whether the trial court accepted a guilty plea in compliance with Crim.R. 11(C). *State v. Meadows*, 8th Dist. Cuyahoga No. 111489, 2022-Ohio-4513, ¶ 18, citing *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26. The focus in reviewing pleas is not "on whether the trial judge has '[incanted] the precise verbiage' of the rule, * * * but on

whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12, quoting *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977).  When evaluating whether a trial court has complied with Crim.R. 11(C), we must ask

> (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.  A defendant seeking to vacate a guilty plea must demonstrate that he or she was prejudiced by a failure of the trial court to comply with Crim.R. 11(C) unless (1) the trial court failed to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that the defendant waived by pleading guilty or (2) the trial court "completely fail[ed]" to "comply with a portion of Crim.R. 11(C)."  *Id*. at ¶ 13-17, 23. The "test for prejudice" is "'whether the plea would have otherwise been made.'" *Id*. at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 44} Appointed counsel asserts that "there are no meritorious, non-frivolous issues for this court's review" in this appeal because the trial court complied with Crim.R. 11(C) and Crawford knowingly, intelligently, and voluntarily entered his guilty pleas.  We agree.

{¶ 45} As detailed above, the transcript from the change-of-plea hearing shows that the trial court fully complied with Crim.R. 11(C) before accepting Crawford's guilty pleas.   The trial court advised Crawford regarding the

constitutional rights he would waive by pleading guilty, and Crawford acknowledged that he understood those rights and his waiver of those rights. The trial court carefully reviewed with Crawford each of the offenses to which Crawford would be pleading guilty, identifying the potential penalties he could receive on each count — including that he would receive mandatory prison time, that the sentences on the firearm specifications would be served prior to and consecutive to the sentences on the underlying offenses, and that it was agreed that the offenses were not allied offenses of similar import and that the sentences could be imposed consecutively — and confirmed that Crawford understood. The trial court further established that Crawford was satisfied with the representation he had received from defense counsel, that no threats or promises had been made to induce Crawford to change his pleas, and that the parties were satisfied that the trial court had complied with Crim.R. 11 in accepting Crawford's guilty pleas.

{¶ 46} There is nothing in the record to suggest that Crawford did not understand the proceedings, the nature of the offenses to which he would be pleading guilty, the rights he would waive by pleading guilty, or the penalties associated with the offenses to which he would be pleading guilty prior to entering his guilty pleas.

{¶ 47} Crawford indicated, at the change-of-plea hearing, that he had no questions regarding any of the trial court's advisements and that, "after going through everything that [the trial had] explained," he still wished to "move forward with [the] plea agreement."

{¶ 48} The record further shows that Crawford was actively involved in plea negotiations and had ample time to consider the state's plea offer, prior to entering his guilty pleas. According to the transcript, the plea offer Crawford ultimately accepted was first placed on the record in October 2021. The record reflects that Crawford, through his counsel, made several counterproposals (all of which were rejected by the state) and that Crawford had multiple discussions with defense counsel and the assistant prosecutor (including discussions with his family members) regarding the state's plea offer. The record also reflects that it was Crawford himself who initiated the final plea negotiations, interrupting the trial and asking the trial court if he and his counsel could talk with the assistant prosecutor yet again.

{¶ 49} Following a thorough, independent examination of the record, we agree that the potential assignment of error relating to the knowing, intelligent, and voluntariness of Crawford's guilty pleas has no merit. The record reflects that trial court complied with Crim.R. 11(C) and that Crawford entered knowing, intelligent, and voluntary guilty pleas. Accordingly, pursuant to *Anders*, counsel's request to withdraw is granted and the appeal is dismissed.

{¶ 50} Nevertheless, in 633853, we remand the case to the trial court for the issuance of nunc pro tunc entries to correct clerical errors in its February 17, 2022 and February 28, 2022 journal entries. Although the transcript reflects that Crawford pled guilty to, and was sentenced for, aggravated burglary in violation of R.C. 2911.11(A)(1) in amended Count 1, the trial court's February 17, 2022 and

February 28, 2022 journal entries state that Crawford pled guilty to felonious assault in violation of R.C. 2903.11(A)(1) in amended Count 1.  Because this error is a clerical error, having no impact on the merits of Crawford's appeal, we grant counsel's motion to withdraw, but remand the case to the trial court for the issuance of nunc pro tunc entries to correct the error.

{¶ 51}  Appeal dismissed and case remanded.

It is ordered that appellee recover from appellant the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for execution of sentence and the issuance of nunc pro tunc entries.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR